**CAIN v. UNIVERSAL PICTURES CO., Inc., et al.**

**No. 1755–Y.**

District Court, S. D. California, Central Division.

Dec. 14, 1942.

Gang & Kopp and Martin Gang, all of Los Angeles, Cal., for plaintiff.

Loeb & Loeb and Norman Newmark, all of Los Angeles, Cal., for defendant Universal Pictures Co.

Sam Wolf and Harold Fendler, both of Los Angeles, Cal., for defendant John M. Stahl.

Loewenthal & Elias and Paul Loewenthal, all of Los Angeles, Cal., for defendant Dwight Taylor.

YANKWICH, District Judge.

The plaintiff, James M. Cain, is a well-known writer who has written several novels, among which, perhaps, the best known is "The Postman Always Rings Twice", and a large number of short stories and stories for film production. In

1937, he wrote a novel called "Serenade", which he copyrighted on December 1st of that year. Universal Pictures Corporation, Inc., is a corporation engaged in the production of motion pictures. On November 22, 1938, the plaintiff sold to the film corporation, for the sum of $17,500, a story entitled "Modern Cinderella". The defendant John M. Stahl is a director employed by Universal in the production of motion pictures. The defendant Dwight Taylor is a playwright and scenario writer who, at various times, has been employed by the film company. In 1939, Stahl began the filming of "Modern Cinderella". Difficulties were encountered after a portion of the story was filmed. The need to use a particular contract star, Irene Dunne, arose. And it was determined that the story should be recast so that she and her male lead, Charles Boyer, could be used in the picture. The adaptation of the story began and went through many hands working under the great strain of filming one portion while writing another portion of the story. Suggestions were made and abandoned. Writers and adapters were changed several times. Finally, the adaptation written by Taylor, in consultation with the director, was accepted. The motion picture was completed on July 15, 1939, and released on August 11, 1939, under the title "When Tomorrow Comes". Credit for the screen play was given to Dwight Taylor and the further legend "Based upon an original story by James M. Cain."

The plaintiff, in his complaint, charges that the motion picture infringes "Serenade". More particularly, he claims that the church sequence in the motion picture is copied from the church sequence in the book. He seeks damages, accounting of profits and injunctive relief against further exhibition of the motion picture. Compliance with the copyright law by legal registration of the book under 17 U.S.C.A. § 1 et seq., is not in dispute. But all the defendants have denied copying.

During the trial of the cause, the Court read the book, the scenarios in their various forms, including the final form, and what is known as the "cutting continuity", which is a description of the action as it evolves on the screen. I also saw the motion picture at a private viewing.

We are to determine whether infringement of copyright has been shown.

Counsel for the plaintiff seem to think that because the plaintiff is a successful writer and has had friendly business relations with the motion picture company, and Taylor admits reading the book upon its publication, while denying copying any portion of it, the case is unusual.

■ Granted that all these facts do not, ordinarily, co-exist in an action of this character, they do not call for different treatment from any other action of this type. Ultimately, the governing principles are the same whether, as here, we deal with an author of prominence or, as was the case in Echevarria v. Warner Brothers Pictures, Inc., D.C.Cal.1935, 12 F.Supp. 632, with one who is, practically, unknown.

■ The issues in both cases are access and copying. Counsel for the plaintiff seem to lay too much stress on access. It is true that where access is admitted, "the probability that the similarities are the result of copying, intentional or unintentional" is high. See Shipman v. R. K. O. Radio Pictures, Inc., 2 Cir., 1938, 100 F.2d 533, 537. This, because access being admitted, there may be, despite the best of intentions, unconscious and unintentional copying amounting to infringement. See Harold Lloyd Corp. v. Witwer, 9 Cir., 1933, 65 F.2d 1, 16. But access alone "means nothing". Dellar v. Sam Goldwyn Inc., 2 Cir., 1939, 104 F.2d 661, 662; and see, Amdur, Copyright Law and Practice, 1936, pp. 670-672. There must still be similarity. And the following questions must still be answered:

"Are there similarities of matters which justify the infringement claimed?

"Was there a piracy of a copyrightable play as shown by similarities of locale, characters, and incidents?" Shipman v. R. K. O. Radio Pictures, Inc., 2 Cir., 100 F.2d 533, 537.

The rules by which it is determined, once access is shown, whether similarity exists which amounts to infringement are always the same. We still must find similarity of distinctive locale, character and incidents.

■ In assaying the two works to determine the existence of similarities, we are warned constantly by courts to avoid the analyses of experts who, by reducing incidents to abstractions, can find the similar in the wholly dissimilar. Judge Learned Hand in Nichols v. Universal Pictures Corp., 2 Cir., 1930, 45 F.2d 119, 122, 123, states: "This is not the proper approach to a solution; it must be more ingenuous,

more like that of a spectator, who would rely upon the complex of his impressions of each character." This is the test which makes similarity dependent not upon the minute, scalpel-like dissection of an expert, who transmutes each incident into an abstraction or sublimation in order to find identity, but upon the impression of sameness which the two works carry to the ordinary reader and observer. And it is the test which the Ninth Circuit Court of Appeals adopted in Harold Lloyd Corporation v. Witwer, 9 Cir., 1933, 65 F.2d 1, 18 et seq., and which it followed later in Kustoff v. Chaplin, 9 Cir., 1941, 120 F.2d 551, 561.

■ The reason for this is obvious. One does not infringe the secret, undisclosed thoughts of an author. One infringes the literary product in which his original thoughts have found expression. And, just as in the case of musical composition, similarity in accent, harmony or melody means "resemblance noticeable to the average hearer" (Hirsch v. Paramount Pictures Corp., D.C.Cal.1937, 17 F.Supp. 816, 818; and see, Carew v. R. K. O. Radio Pictures, Inc., D.C.Cal.1942, 43 F.Supp. 199, 200 et seq.; Darrell v. Joe Morris Music Co., 2 Cir., 1940, 113 F.2d 80), so in the case of a motion picture, there is no infringement "unless an ordinary observer is led to believe that the film is a picturization of the story." Kustoff v. Chaplin, 9 Cir., 1941, 120 F.2d 551, 561.

With these principles in mind, the problems involved here can be solved easily.

As to access, the testimony of Taylor shows that he read "Serenade" when it was published some two years before he began work on the scenario of the picture. But he denies copying. He denies that, at the time he evolved the church sequence at the request of the director, he had any recollection of the church scene in "Serenade". He states that the sequence of incidents came to him from his own recollection of regular church attendance and service as an altar boy in a Catholic church in his youth. The producer of the picture, John M. Stahl, testified, without contradiction, that the church scenes were suggested by him to another writer, George O'Neil, who worked on the script before Taylor and that Taylor began work with O'Neil's material. Taylor had nothing to do with the direction of the motion picture.

■ These facts are important because plagiarism, if it exists at all, must be found in the finished motion picture. The Taylor scenario has not been published. It has never left the files of the film company. It has been transmuted into the motion picture. And unless Taylor's borrowing, assuming that there was such, was carried over into the picture by the director, so as to convey to the person who, having read the book, sees the motion picture, the idea of identity, we have neither access nor copying. Stahl, the director, a man of long experience, denies that he had ever read "Serenade" or that he had read the two synopses found in the files of the story department of the film company and dated December 10, 1937, and January 7, 1938. He also denies that when the church scene was discussed with Taylor, Taylor suggested that such a scene had been used recently by Cain in a book. Stahl, who was solely responsible for the motion picture, told a very direct, forthright, and convincing story of the evolution of the picture, of the difficulties encountered in its production and how they were solved by introducing the church scene which had been used successfully in a recent picture produced by another company and which he, himself, had used in other productions. So, if we disregard Taylor's random remark, to which the plaintiff has attached implications of deliberate theft, and which Taylor, himself, repudiates, there is no proof of access.

■ But admit that there was access. As I stated at the trial, in the face of the denial by Taylor, Stahl, his secretary, Miss Boone, of any deliberate copying, a finding of conscious copying would find no support whatever in the evidence. Was there what the cases call "unconscious and unintentional copying?" See Harold Lloyd Corporation v. Witwer, 9 Cir., 1933, 65 F. 2d 1, 16. If we apply the only permissible test—similarity—as it is manifest to the ordinary reader of the book and observer of the picture, the sole and obvious answer must be negative.

One need not deny originality to "Serenade". There can be no claim of similarity of subject or of characterization between the book as a whole and the motion picture. In the book, we have a musician, who, seeking escape from a failure of his voice, caused by an homosexual attachment, finds his voice again in the elemental passion for a primitive Mexican girl of Indian extraction, only to find his newly-won fame destroyed by a murder committed by

the girl which leads to her own murder in her native land. In the motion picture, we have a famous musician, wedded to a wife who is mentally ill, who falls in love with a waitress and finds, not momentary happiness in the fulfillment of that love, but a greater happiness in its renunciation by both. Plaintiff, himself, concedes as much when he limits the alleged infringement to the church sequence. But, here again, there is no similarity. To go into detailed comparison of the two sequences would require epitomizing for this opinion the barbaric, elemental scenes, shocking to any person with religious sensibility, before the altar of the little church in Acapulco, Mexico. I shall not do so. It suffices to say that it is inconceivable that the ordinary theater-goer, who saw the chaste, idyllic church sequence in "When Tomorrow Comes", of the two lovers who spent the night in the church choir loft, where they sought asylum from the storm, would see in it, in the manner of its development or in the means used to portray the period between their entry into the church to their rescue, any similarity between it and the sensuous scene which Cain portrays in "Serenade". I can see none.

In fact, I cannot understand "how any one could persuade himself that the one was borrowed from the other". Lacombe, J. in Hubges v. Belasco, C.C.N.Y.1904, 130 F. 388; and see Stevenson v. Harris, D.C. N.Y.1917, 238 F. 432; Dymow v. Bolton, 2 Cir., 1926, 11 F.2d 690.

It is not claimed that the choice of the church as a refuge in storm lends itself to the assertion of copyrightable originality. Houses of worship have been asylums since their very beginning. At one time, the legal privilege of sanctuary attached to churches. And he who entered one of them acquired immunity against the law.

■ The other small details, on which stress is laid, such as the playing of the piano, the prayer, the hunger motive, as it called, are inherent in the situation itself. They are what the French call "scènes à faire". Once having placed two persons in a church during a big storm, it was inevitable that incidents like these and others which are, necessarily, associated with such a situation should force themselves upon the writer in developing the theme. Courts have held repeatedly that such similarities and incidental details necessary to the environment or setting of an action are not the material of which copyrightable originality consists. See Bachman v. Belasco, D.C.N.Y.1913, 224 F. 815; Underhill v. Belasco, D.C.N.Y.1918, 254 F. 838; Bein v. Warner Bros. Pictures, Inc., 2 Cir., 1939, 105 F.2d 969, 971; London v. Biograph Co., 2 Cir., 1916, 231 F. 696; Seltzer v. Sunbrock, D.C.Cal.1938, 22 F.Supp. 621, 628; De Montijo v. 20th Century Fox Film Corp., D.C.Cal.1941, 40 F.Supp. 133.

So I need not draw any parallellisms between the scene in the plaintiff's book and similar scenes in similar locale, which may occur to me as a student of literature. Conceding to the plaintiff originality in the matter of treatment of the church sequence in "Serenade", I find such dissimilarity in the effect, purpose and impression upon the observer in the church sequence in "When Tomorrow Comes," that it did not and could not have its genesis in it.

The opinion might well end here. However, the nature of some other defenses is such as to require a statement of the court's decision on them. Taylor has pleaded that the action, as to him, is barred by Subdivision 1 of Section 339 of the California Code of Civil Procedure, which provides a two-year limitation in certain tort actions. See Italiani v. M. G. M. Corp., 1941, 45 Cal.App.2d 464, 114 P.2d 370. The motion picture was released more than two years before the commencement of the action. However, as I ruled on the motion for summary judgment, the action is not barred in two years from the date of release. I readopt the reasons stated in my denial of the motion for summary judgment.

■ Infringement of copyright consists (1) of the alleged copying of a part of the plaintiff's work, and its inclusion in the scenario for the purpose of its (2) incorporation into the finished motion picture, (3) for exhibition purposes. If Taylor appropriated, as the Complaint alleged, a portion of the plaintiff's work and turned it over to the other defendants, his connection with the picture did not end then.

The material was intended by him to be used in the motion picture to be produced from the story, which was to be exhibited to the public on its completion and release.

So the wrong done to the plaintiff in a case of this character does not lie in the mere copying of his material, which, without publication or incorporation into a motion picture, would result in no injury to him. It consists of (1) the deliberate appropriation of a portion of his work and its delivery to others for (2) inclusion in

the finished picture and (3) exhibition to the public.

■ Therefore, conceding that the actual distribution of the picture, following its original release, was done by others than Taylor, the action is not barred, as to him, by the expiration of two years from the date of release. For the continuous exhibition of the picture is one of the aims of the composition of the script by him. He is, therefore, chargeable not only with the act of composing the screen play, but is also a participant in its incorporation into the motion picture and its subsequent exhibition. For those were the contemplated purposes inherent in his contribution. Hence the conclusion that the action as to Taylor is not barred by the statute of limitations.[1]

■ I feel, also, that, in justice to the author, I should restate the opinion I expressed from the bench on the defense interposed by some of the defendants that "Serenade" is not entitled to copyright because of its indecent and immoral character. There are authorities which would deny copyright to works of this character. 18 C.J.S., Copyright and Literary Property, § 27, p. 170; Herbert A. Howell, The Copyright Law, 1942, p. 43; Richardson v. Miller, C.C.Mass.1877, 20 Fed.Cas. pp. 722, 723, No. 11,791; Broder v. Zeno Mauvais Music Co., C.C.Cal.1898, 88 F. 74, 78; Barnes v. Miner, C.C.N.Y.1903, 122 F. 480, 481, 490; Hoffman v. Le Traunik, D.C.N.Y. 1913, 209 F. 375, 379. "Courts of justice will not lend their aid to protect the authors of immoral works." Richardson v. Miller, supra, 20 Fed.Cas. at page 723, No. 11,791. In determining whether a work is indecent or immoral, I would adopt the tests laid down in cases arising under the Postal Statutes, 18 U.S.C.A. § 334, denying mailing privileges to indecent works. Under them, the work must be considered as a whole and have a direct tendency to corrupt morals. Mere vulgarity or coarseness of language does not condemn it. Konda v. United States, 7 Cir., 1892, 166 F. 91, 22 L.R.A.,N.S., 304; Swearingen v. United States, 1896, 161 U.S. 446, 16 S.Ct. 562, 40 L.Ed. 765; Dunlop v. United States, 1897, 165 U.S. 486, 17 S.Ct. 375, 41 L.Ed.

799; Botsford v. United States, 6 Cir., 1914, 215 F. 510; Sales v. United States, 8 Cir., 1919, 258 F. 597; United States v. One Book Ulysses, 2 Cir., 1934, 72 F.2d 705; United States v. Levine, 2 Cir., 1936, 83 F.2d 156 See Postal Decisions, 1939, p. 466 et seq.

■ The church scene in "Serenade", if it stood alone, could be considered not only indecent and vulgar, but immoral and sacrilegious. To use a church, especially one of a denomination which teaches the living presence of God on the altar, for the purpose for which "Serenade" uses the little church at Acapulco, Mexico, is an act of impious desecration. However, I think that whatever immorality or sacrilege there be in this scene is cured by the last scene in the book. The author makes the Mexican girl, Juana, pay for her crimes with her life, by having her murdered by the politico, with whom she had associated in the years past and from whom she had fled. She is brought back, in death, before the very altar where the sensual scenes were enacted. There is penance, with contrition on the part of Sharp, culminating in absolution by the priest, as he kneels in the vestry before the funeral mass is sung. A narrative can have no immoral tendency when derelictions end in punishment or suffering and contrition, followed by merciful forgiveness, which brings, as Sharp puts it, "some kind of gray peace". The author did not seem to be conscious of the effect of the final scene. And when the meaning just expressed was called to his attention, he stated that he had not had it in mind when writing. But, whether so intended or not, this scene which makes one character expiate by death and the other by penance, their guilt and sacrilege, destroys all implications of immorality or impiety in the earlier scenes of "Serenade". "Though your sins be as scarlet, they shall be as white as snow; though they be red like crimson, they shall be as wool." (Isaiah 1, 18; and see John XX, 23; Acts V, 1–9; James V, 15–16; John Herman Randall, Making of the Modern Mind, 1926, p. 51, quoting Pope Eugene IV's Statement for the Armenians, on the material of penance.) And the author should receive

---

[1] In view of the decision reached on the merits, this determination may seem unnecessary. However, it is one of the issues raised by the pleadings, which calls for a finding. And as the problem is novel and the memorandum written on the denial of the motion for summary judgment has not been published; I deem it advisable to incorporate its substance into this opinion, for whatever assistance it may bring to those interested in the subject.

the full advantage of his creative act, although it be unconscious.

Judgment will, therefore, be for the defendants that plaintiff take nothing by his Complaint against the defendants or any of them.

 The allowance of attorney's fees in copyright cases to the prevailing party is discretionary. 17 U.S.C.A. § 40; Marks v. Leo Feist, Inc., 2 Cir., 1932, 8 F.2d 460, 461; Buck v. Bilkie, 9 Cir., 1933, 63 F.2d 447. They should not be awarded unless equity considerations exist which call for the penalization of the losing party. In this case, I feel that the relationship between the plaintiff and the defendants, and the circumstances under which the action was brought, are such that no attorney fees should be awarded to anyone. And this will be the order.

Counsel for the defendants are ordered to prepare formal findings and judgment under Local Rule 8.