Verna H. DORAN, William E. Doran and Verna H. Doran dba Plasti-Personalities, a sole proprietorship, Plaintiffs,

v.

SUNSET HOUSE DISTRIBUTING CORP., a corporation, and American Cover Co., Inc., a corporation, Defendants.

No. 1342-60.

United States District Court
S. D. California,
Central Division.

Sept. 20, 1961.

942

Richard F. Carr, William E. Moore, Los Angeles, Cal., for plaintiffs.

Vaughan, Brandlin & Baggot and Marvin A. Freeman, Attorneys, Los Angeles, Cal., for defendants.

BYRNE, District Judge.

Plaintiffs filed their complaint in two counts for copyright infringement and unfair competition, invoking the court's jurisdiction under the copyright laws of the United States, Title 17 U.S.C.A. § 1 et seq., and under Title 28 U.S.C.A. §§ 1338(a) and 1338(b).

In the first count, plaintiffs state that they are the authors and proprietors of a work of art, namely a Santa Claus figure, for which they obtained copyright registration on August 28, 1959. It is alleged that since this date the defendants, and each of them, have infringed plaintiffs' copyright by manufacturing, publishing and placing upon the market a Santa Claus figure which defendants copied largely from plaintiffs' copyrighted work of art without plaintiffs' consent.

The second count alleges a cause of action for unfair competition under California law.

When assembled and stuffed with crumpled newspaper, plaintiffs' Santa Claus figure is three-dimensional and approximately five feet six inches in height. This figure is designed to be used as a Christmas decoration and may be placed either inside or outside of the home.

The major component of plaintiffs' Santa Claus is a large bag cut from red plastic material, sewn together, and provided with a slit in the back for the insertion of crumpled newspaper. This bag is cut from an appropriate pattern so that it defines the arms, legs and torso of a human form. White trim is utilized at the end of the arms to give the appearance of mittens, while black plastic at the end of the legs serves as boots. At the top of the torso, a smaller bag is included to represent the head. At the back of this smaller bag there is a flap to receive a stick for supporting the head.

The second component of plaintiffs' Santa Claus consists of a face and hood, which are slipped over the head of the figure.

Finally, a tunic snapped around the waist performs the dual function of providing the illusion of a coat and of holding in the stuffing. A square molded belt buckle, inscribed with scroll work and including a central opening, is attached to the top of the tunic. At the bottom is a horizontal white plastic stripe representing fur trim.

Plaintiffs package their Santa Claus figure for sale in a transparent plastic bag accompanied by an instruction sheet for the construction of a simple wire frame to hold the figure erect in a standing position. Plaintiffs' trademark and trade name, "Plasti-Personalities", appears on this sheet, and is also printed on other descriptive material included in the package.

Plaintiffs have sold their product since 1958. The distributors of plaintiffs' Santa advertised the product extensively in newspapers. Each ad showed Santa in a pose depicting its use as a Christmas decoration.

During the year 1960, defendant American Cover Co., Inc., commenced the manufacture of its Santa Claus figure, which was sold to the retail trade by defendant Sunset House Distributing Corp. This included sales through nationally distributed mail order catalogues and through retail stores. In addition, there were some sales by representatives of American Cover Co.

The Santa Claus figure produced by defendant American Cover is, like plaintiffs' product, made of plastic and life-sized. Defendants concede that their Santa Claus has many mechanical features "not dissimilar" to those of plaintiffs' Santa. It, too, is comprised of a large red plastic bag roughly depicting the human form, with a bag of smaller dimensions at the top, arms with white gloves, and legs with black boots. It, too, has a mask and hood, and a tunic with a black belt at the top and a horizontal white stripe at the bottom. It utilizes an aperture at the back for inserting newspaper stuffing, a sleeve as a receptacle for a slat or yardstick to hold the head erect, and a tunic to hold the stuffing inside.

However, there are certain differences between defendants' Santa Claus and that of plaintiffs. Defendants did not use a molded belt buckle, but instead cut a more simple item from flat sheet plastic having a somewhat different form and appearance from that of plaintiffs' belt buckle. Also, the face for defendants' unit is a fabric mask, while the hood is of cloth instead of plastic.

Defendants sold their Santa Claus figure in a transparent plastic bag similar to plaintiffs' package. The first shipment of Santas received for distribution from American Cover included an instruction sheet bearing the name "Plasti-Personalities". Officials of defendant American Cover have no explanation as to how this name came to appear on their instruction sheet.

In the promotion of defendants' Santa Claus figure, defendant Sunset House distributed a catalogue and published newspaper advertisements. These advertisements depicted Santa perched on a roof gable much the same as the illustrations in the earlier ads for plaintiffs' product. The language in defendants' ads followed a similar format to those of plaintiffs. The price, however, was $6.98 instead of the $7.95 cost of plaintiffs' Santa Claus.

Although the witnesses failed to recall all the events leading up to the production and sale of defendants' Santa Claus figure, representatives of both defendants conceded that they had been inspired by plaintiffs' product. Mr. Tashman of defendant American Cover admitted having obtained one of plaintiffs' Santa Claus figures and testified that it might have been secured from Mr. Carlson of defendant Sunset House. At any rate, Mr. Tashman was asked by Mr. Carlson to produce a Santa Claus figure such as that manufactured by plaintiffs, and such as Mr. Carlson had observed in the advertisements of plaintiffs' product.

The evidence established that in 1960, the first year defendants' product appeared, plaintiffs sold approximately 2,000 fewer of their Santas than in the preceding year.

Plaintiffs' Santa Claus was copyrighted as a work of art, or a model or design for a work of art, as provided in 17 U.S. C.A. § 5(g).[1]

Defendants contend that plaintiffs' copyright is invalid for two reasons.

---

1. "§ 5. Classification of works for registration
 "The application for registration shall specify to which of the following classes the work in which copyright is claimed belongs:

\* \* \* \* \* \* \*

"(g) Works of art; models or designs for works of art."

944

First, they argue that since Santa Claus is in the public domain, a work of art embodying this legendary figure cannot be the subject of a valid copyright.

■ Unlike the subject matter of a patent, copyrighted material need not be new, but only original. Stein v. Mazer, 4 Cir., 1953, 204 F.2d 472, affirmed 1954, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630; Ricker v. General Electric Co., 2 Cir., 1947, 162 F.2d 141. "Originality" in the realm of copyright refers to the form of the expression, and not to the novelty of the subject matter. Chamberlin v. Uris Sales Corporation, 2 Cir., 1945, 150 F.2d 512; Silvers v. Russell, D.C.S.D.Cal.1953, 113 F.Supp. 119. This is necessarily so because a copyright protects only the expression of the idea, not the idea itself. Mazer v. Stein, 1954, 347 U.S. 201, 74 S. Ct. 460, 98 L.Ed. 630; Kalem Co. v. Harper Bros., 1911, 222 U.S. 55, 32 S.Ct. 20, 56 L.Ed. 92; Holmes v. Hurst, 1899, 174 U.S. 82, 19 S.Ct. 606, 43 L.Ed. 904; Kaeser & Blair, Inc., v. Merchants' Ass'n, 6 Cir., 1933, 64 F.2d 575.

■ The fact that a copyrighted article depicts a figure, theme or idea in the public domain, does not in itself void the copyright. Rather, the test of copyrightability must be the form which the author has used to express the figure, idea or theme. In the instant case, plaintiffs have reproduced the familiar figure of Santa Claus in a three-dimensional, plastic form. Therefore, the question is whether this medium of expression is sufficiently original to support the granting of the copyright.

■ To be copyrightable, a work must be "original" in that the author has created it by his own skill, labor and judgment. Dorsey v. Old Surety Life Ins. Co., 10 Cir., 1938, 98 F.2d 872, 119 A.L.R. 1250; Smith v. George E. Muehlebach Brewing Co., D.C.W.D.Mo.1956, 140 F. Supp. 729. As stated in Alfred Bell & Co. v. Catalda Fine Arts, 2 Cir., 1951, 191 F.2d 99, 102.

" * * * 'Original' in reference to a copyrighted work means that the particular work 'owes its origin' to the 'author.' No large measure of novelty is necessary. * * *

" * * * All that is needed to satisfy both the Constitution and the statute is that the 'author' contributed something more than a 'merely trivial' variation, something recognizably 'his own.' Originality in this context 'means little more than a prohibition of actual copying.' No matter how poor artistically the 'author's' addition, it is enough if it be his own. Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 250, 23 S.Ct. 298, 47 L.Ed. 460."

Thus, it appears that the requirements for the "originality" necessary to support a copyright are modest. The author must have created the work by his own skill, labor and judgment, contributing something "recognizably his own" to prior treatments of the same subject. However, neither great novelty nor superior artistic quality is required.

■ Here, plaintiffs first envisioned, and then created by their own skill, labor and judgment, a Santa Claus in the form of a three-dimensional figure made of plastic. It is true, of course, that plaintiffs' Santa has all of the traditional features which go to make up Santa Claus, viz. the red suit and cap with white fur trim, the white hair and beard, the black belt and boots, the ruddy face and the fat form. These features are part and parcel of the "idea" of Santa Claus, and hence are not copyrightable. However, the originality here lies in the form—three-dimensional—and the medium—plastic—which plaintiffs have used to express the idea of Santa Claus. As far as the record reveals, plaintiffs were the first to reproduce the traditional character in this particular form and medium. It may truly be said that plaintiffs' Santa Claus, as copyrighted, owes its origin to its authors.

Therefore, laying aside the purely functional features [2] which plaintiffs concede are not subject to copyright protection, plaintiffs' Santa is "original" because of its form and medium, and this originality is sufficient to form the basis of a valid copyright.

Defendants' second attack upon the validity of plaintiffs' copyright is that plaintiffs' product is not a work of art at all, but rather a garment. Presumably, this attack is based upon the premise that the utilitarian aspects of an item preclude its copyrightability as a work of art.

In the first place, it may well be doubted whether plaintiffs' Santa Claus is actually a garment, as defendants assert. This figure was intended for use as a Christmas decoration, and the copyright was granted on the basis of a photograph submitted to the Registrar of Copyrights showing plaintiffs' Santa Claus in its three-dimensional form. Moreover, "garment" is defined by Webster as "Any article of *clothing*." Plaintiffs' Santa is not a "garment" because it was neither designed nor intended to be worn by anyone as an article of clothing.

However, even if plaintiffs' Santa could be used as a garment, the copyright would not thereby be invalidated. For, in Mazer v. Stein, 1954, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630, the Supreme Court put to rest all previous doubts on the subject by holding that the actual or intended use in industry of an article eligible for copyright does not bar or invalidate its registration:

"* * * [A]rtistic articles are protected in 'form but not their mechanical or utilitarian aspects.'

* * * The dichotomy of protection for the aesthetic is not beauty and utility but art for the copyright and the invention of original and ornamental design for design patents. We find nothing in the copyright statute to support the argument that the intended use or use in industry of an article eligible for copyright bars or invalidates its registration. We do not read such a limitation into the copyright law." At page 218 of 347 U.S. at page 471 of 74 S.Ct.

In the instant case, plaintiffs' copyright secures to them the right to reproduce their Santa Claus *as an artistic figure*, an item of decoration. Therefore, any utilitarian features possessed by plaintiffs' Santa because of its possible use as a garment, do not invalidate plaintiffs' copyright registration.

■ Finally, defendants contend that, even if the copyright is valid, the copyright notice is defective for the following reasons:

(1) The notice in this case reads: "Copyright 1958, Plastic Personalities." Plaintiff Verna Doran ceased using "Plastic Personalities" both as a trade name and a trademark in 1959, when she changed the trademark to "Plasti-Personalities" and secured State registration therefor. Title 17 U.S.C.A. § 19 requires that the copyright notice bear the name of the owner.

(2) Plaintiffs' copyright notice is affixed only to the hood, one separate item of the three that comprise the product.

Title 17, U.S.C.A. § 19 prescribes the form and content of the copyright notice.[3] Defendants argue that plaintiffs'

---

2. The slit in the back to receive newspaper stuffing, the tunic to hold in the stuffing, and the flap to accommodate a stick for holding the head erect.

3. "§ 19. Notice; form
"The notice of copyright required by section 10 of this title shall consist either of the word 'Copyright', the abbreviation 'Copr.', or the symbol ©, accompanied by the name of the copyright proprietor, and if the work be a printed literary, musical, or dramatic work, the notice shall include also the year in which the copyright was secured by publication. In the case, however, of copies of works specified in subsections (f) to (k), inclusive, of section 5 of this title, the notice may consist of the letter C enclosed within a circle, thus ©, accompanied by the initials, monogram, mark or symbol of the copyright proprietor; *Pro-.*

copyright notice does not comply with the provisions of the statute because the notice gives neither the name of the copyright owners (Verna H. Doran and William E. Doran) nor their registered trademark ("Plasti-Personalities"), but merely their former trade name ("Plastic Personalities"). However, plaintiffs since 1959 have used their present trademark and trade name, "Plasti-Personalities," on their copyrighted product, as well as on instructional material packaged with the product, and on advertising literature used in soliciting the sale of the product.

■ The copyright notice need not set forth the family or corporate name of the copyright proprietor, it being sufficient if the notice contains either the trademark or the trade name of the proprietor. Scarves by Vera, Inc. v. United Merchants, D.C.S.D.N.Y.1959, 173 F.Supp. 625 (trademark); Trifari, Krussman & Fishel, Inc. v. B. Steinberg-Kaslo Co., D.C.S.D.N.Y.1956, 144 F.Supp. 577 (trademark); Hollywood Jewelry Mfg. Co. v. Dushkin, D.C.S.D.N.Y.1955, 136 F. Supp. 738 (trade name); Werckmeister v. Springer Lithographing Co., D.C.S.D. N.Y.1894, 63 F. 808 (trade name).

Therefore, plaintiffs' use of their trademark and trade name in its present form, "Plasti-Personalities," in their copyright notice, constitutes sufficient compliance with the notice requirement set forth in § 19.

However, even if it were true, as defendants assert, that plaintiffs have continued to use the designation "Plastic Personalities" in their copyright notice, such designation would still be sufficient notice of plaintiffs' copyright.

■ The purpose of the notice requirement in § 19 is to advise the public of the copyright proprietor's claim and to prevent innocent persons, unaware of the copyright, from incurring infringement penalties. Fleischer Studios v. Ralph A. Freundlich, Inc., 2 Cir., 1934, 73 F.2d

276, certiorari denied 1935, 294 U.S. 717, 55 S.Ct. 516, 79 L.Ed. 1250; Inter-City Press, Inc. v. Siegfried, D.C.W.D.Mo. 1958, 172 F.Supp. 37; Glenco Refrigeration Corp. v. Raetone Commercial R. Corp., D.C.E.D.Pa.1957, 149 F.Supp. 691; Trifari, Krussman & Fishel, Inc. v. B. Steinberg-Kaslo Co., D.C.S.D.N.Y.1956, 144 F.Supp. 577; Hollywood Jewelry Mfg. Co. v. Dushkin, D.C.S.D.N.Y.1955, 136 F.Supp. 738; Harry Alter Co. v. Graves Refrigeration, D.C.N.D.Ga.1951, 101 F.Supp. 703.

In Fleischer Studios v. Ralph A. Freundlich, Inc., supra, the fact that the copyright notice stated the name of the copyright proprietor to be "Fleischer Studios," without adding the abbreviation, "Inc.," which was part of the corporate name, was held not fatal to the notice. The court stated: "A reasonable construction of the statutory requirement shows that the name of the copyright proprietor, is sufficient in form, if it gives notice of copyright to one who is looking for the truth and who desires to avoid infringement." [73 F.2d 277.]

Here, plaintiffs conducted their business, a sole proprietorship, under the name "Plastic Personalities" until 1959, and thereafter under the name "Plasti-Personalities." At all times, their copyrighted product was manufactured under one of these two names. Hence, the fact that plaintiffs' trademark and trade name is now "Plasti-Personalities" rather than "Plastic Personalities" should not invalidate a notice using the latter designation. "Plastic Personalities" was plaintiffs' trade name at the time they received their certificate of registration; and the dropping of a "c" and the addition of a hyphen are at most insubstantial variations which would not mislead innocent persons. As stated in the Fleischer case, the name of the copyright proprietor is sufficient in form if it gives notice of copyright to one who is looking for the truth and desires to avoid infringement. Surely the name "Plastic Personalities" would

*vided,* That on some accessible portion of such copies or of the margin, back, permanent base, or pedestal, or of the substance on which such copies shall be mounted, his name shall appear. * * * "

lead defendants or other interested persons to plaintiffs, and no one would have been better forewarned or informed if the name in its present form, "Plastic-Personalities," had appeared in the copyright notice.

Therefore, whether plaintiffs since 1959 have used their present trademark and trade name "Plasti-Personalities" in their copyright notice, or whether they have continued to use their original trade name "Plastic Personalities," they have complied with the notice requirement of 17 U.S.C.A. § 19, because either designation gives notice of the copyright to interested persons and is sufficient to lead such persons to plaintiffs.

■ .Defendants urge that plaintiffs' copyright notice is deficient for another reason, *viz.*, that the notice appears only on the hood of plaintiffs' Santa, and not on the other two components of the product.

In support of their contention, defendants cite two cases in which it was held that hangtags attached to copyrighted articles do not constitute sufficient notice of copyright. Scarves by Vera, Inc. v. United Merchants, D.C.S.D.N.Y.1959, 173 F.Supp. 625; Trifari, Krussman & Fishel, Inc. v. B. Steinberg-Kaslo Co., D.C.S.D.N.Y.1956, 144 F.Supp. 577. No other conclusion was possible in these cases because hangtags, not being part of the article, may be easily removed or lost, and 17 U.S.C.A. § 19 requires that the copyright notice appear on some portion of the article itself.

In the instant case, plaintiffs' placement of their copyright notice on Santa's hood constitutes literal compliance with the requirement of § 19, since the notice appears on an "accessible portion" of the product. The fact that the notice is placed only on the hood and not on the body and tunic as well, does not render the notice defective. See Patterson v. Century Productions, 2 Cir. 1937, 93 F.2d 489, certiorari denied 1937, 303 U.S. 655, 58 S.Ct. 759, 82 L.Ed. 1114; also Boucher v. Du Boyes, Inc., 2 Cir., 1958, 253 F.2d 948, certiorari denied 1958, 357 U.S. 936, 78 S.Ct. 1384, 2 L.Ed.2d 1550.

Since plaintiffs' copyright notice appears on one component of their Santa Claus figure, and all three components are sold as a unit and indeed cannot be used separately, the notice is properly and adequately placed on the copyrighted product.

■ A copyright confers upon its owner the sole right to multiply copies of his work, and to prevent others from so doing. Mazer v. Stein, 1954, 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630; Richards v. Columbia Broadcasting System, D.C. D.C.1958, 161 F.Supp. 516; Gordon v. Weir, D.C.E.D.Mich.1953, 111 F.Supp. 117, affirmed 6 Cir., 1954, 216 F.2d 508.

■ To constitute infringement of a copyright, the copying need not be of every detail so long as the copy is substantially similar to the copyrighted work. Comptone Company v. Raytex Corporation, 2 Cir., 1958, 251 F.2d 487; Universal Pictures Co. v. Harold Lloyd Corporation, 9 Cir., 1947, 162 F.2d 354. A copy, such as will constitute copyright infringement, is that which ordinary observation would cause to be recognized as having been appropriated from or patterned after the copyrighted work. Dymow v. Bolton, 2 Cir., 1926, 11 F.2d 690; Peter Pan Fabrics, Inc. v. Acadia Company, D.C.S.D.N.Y.1959, 173 F.Supp. 292, affirmed 2 Cir., 1960, 274 F.2d 487; Lewis v. Kroger Co., D.C.S.D.W.Va.1952, 109 F.Supp. 484; Allegrini v. De Angelis, D.C.E.D.Pa.1944, 59 F.Supp. 248, affirmed 3 Cir., 1945, 149 F.2d 815.

■ Applying this test to the facts here, it will readily be seen that defendants' Santa Claus constitutes a copy of, and hence an infringement of, plaintiffs' Santa. Both products are comprised of a large red plastic bag roughly depicting the human form, with a bag of smaller dimensions at the top, arms with white gloves and legs with black boots. Both have a mask and hood, as well as a tunic with a black belt at the top and a horizontal white stripe at the bottom to give the illusion that the figure is wearing a coat. Indeed, defendants admit that the only differences between their Santa Claus and that of plaintiffs are these:

defendants did not use a molded belt buckle but instead cut a more simple item from a flat sheet plastic; and the face for defendants' Santa is a fabric mask, while the hood is of cloth instead of plastic.

From these facts, it appears that the ordinary observer seeing the two products could not fail to recognize that defendants' Santa Claus was patterned after plaintiffs' Santa. The differences between the two products are so minor as not to change this result.

 In addition to requiring a showing of copying, some cases state that the alleged infringer's access to the copyrighted article must be proved in order to establish infringement. Richards v. Columbia Broadcasting System, D.C.D. C., 1958, 161 F.Supp. 516; Cain v. Universal Pictures Co., D.C.S.D.Cal.1942, 47 F. Supp. 1013. However, since it is obvious that there can be no copying unless the infringer is familiar with the copyrighted work, and since there is no infringement if two authors independently create similar works, access is but a means of eliminating coincidence or independent effort as an explanation for likenesses between the copyrighted article and the infringing article.

In the instant case, Mr. Stanley Tashman, vice president of defendant American Cover Co., testified that he himself didn't originate the idea of a plastic Santa; he "got the idea from plaintiff but didn't copy her." He further testified that he "came into contact" with plaintiffs' Santa Claus figure before he manufactured his, but that he "couldn't remember exactly when."

In addition to manufacturing a plastic copy of plaintiffs' Santa Claus, defend-

ants also prepared and distributed with their product a leaflet bearing a picture of a stuffed Santa Claus. The model for this illustration was a Santa Claus figure which was supplied to the artist by Mr. Tashman of defendant American Cover Co. From this, it may be inferred that the model for defendants' illustration was plaintiffs' Santa Claus figure, inasmuch as the Santa Claus in the drawing had a belt buckle with the scroll work characteristic of plaintiffs' Santa, but absent in defendants' Santa.

The conclusion is inescapable that defendants had access to plaintiffs' Santa Claus and that they copied it, thereby infringing plaintiffs' copyright.

 Title 28 U.S.C.A. § 1338(b) confers upon the district court jurisdiction of a claim of unfair competition when joined with a "substantial and related" claim under the copyright law.[4] Plaintiffs' claim of copyright infringement is "substantial and related" and the court has jurisdiction of the claim of unfair competition, which is governed by the law of California, the place where the acts complained of occurred. National Van Lines v. Dean, 9 Cir., 1956, 237 F.2d 688; Sunbeam Furniture Corp. v. Sunbeam Corp., 9 Cir., 1951, 191 F.2d 141; Silvers v. Russell, D.C.S.D.Cal., 1953, 113 F.Supp. 119.

 California Civil Code, § 3369 [5] defines unfair competition and provides that such conduct may be enjoined. Since § 3369 defines "unfair competition" disjunctively as any "unfair or fraudulent business practice," plaintiff need not allege or prove fraudulent intent on the part of defendant in order to be entitled to injunctive relief. However, damages

4. "§ 1338. Patents, copyrights, trademarks, and unfair competition.

\* \* \* \* \* \* \*

"(b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws."

5. "§ 3369.

\* \* \* \* \* \* \*

"2. [Unfair competition enjoinable.] Any person performing or proposing to perform an act of unfair competition within this State may be enjoined in any court of competent jurisdiction.

"3. [Definitions.] As used in this section, unfair competition shall mean and include unfair or fraudulent business practice and unfair, untrue or misleading advertising \* \* \*."

for lost profits cannot be awarded without proof of actual fraud.[6]

Unfair competition may result from the unauthorized use of a trademark or trade name, American Distilling Co. v. Bellows & Co., 1951, 102 Cal.App.2d 8, 226 P.2d 751, MacSweeney Enterprises v. Tarantino, 1951, 106 Cal.App.2d 504, 235 P.2d 266; or from imitation of plaintiffs' product, Grant v. California Bench Co., 1946, 76 Cal.App.2d 706, 173 P.2d 817, I. Rokeach & Sons v. Kubetz, 1935, 10 Cal.App.2d 537, 52 P.2d 567. The test of whether such practices constitute unfair competition is the likelihood of confusion in the mind of the public as to the source or origin of the product. American Distilling Co. v. Bellows, supra; MacSweeney Enterprises v. Tarantino, supra; Grant v. California Bench Co., supra; I. Rokeach & Sons v. Kubetz, supra; 47 Cal.Jur.2d, Trademarks, Tradenames, and Trade Practices § 26, page 743.

In the instant case, defendants infringed plaintiffs' registered trademark and trade name, "Plasti-Personalities," by including with their product an instruction sheet bearing this name. Furthermore, defendants imitated plaintiffs' product, manufacturing and distributing an almost exact replica thereof. There can be little doubt that this conduct on the part of the defendants not only was likely to, but actually did, confuse the purchasing public as to the source and origin of defendants' product. In fact, a retail distributor of Christmas decorations testified that in 1960 his customers were confused as to which Santa Claus figure he was selling, plaintiffs' or defendants'.

Therefore, defendants' conduct constitutes unfair competition under California law, as well as copyright infringement under federal law.

Under 17 U.S.C.A. § 101(a), plaintiffs are entitled to an injunction enjoining the defendants, and each of them, from further infringing plaintiffs' copyright. Subsection (b) of § 101 provides in essence that the court may award to the copyright proprietor either the actual damages he has suffered due to the infringement, plus the profits made by the infringer, or damages in an amount to be computed in accordance with an arbitrary standard set forth in the statute.

In the instant case, plaintiffs have not attempted to show the monetary damage which they have sustained by reason of defendants' acts. As to the profits derived by defendants from their infringement, Mr. Tashman of defendant America Cover Co. testified that this defendant sold its Santa Claus figures to defendant Sunset House for $3.10 each, at a profit of about 7 per cent. However, the record is wholly devoid of any indication of the profits made by defendant Sunset House by virtue of its participation in the infringement.

Where, as here, there is no evidence as to the damage suffered by the copyright owner or the profits realized by the infringer, the court is justified in awarding statutory damages. Woolworth Co. v. Contemporary Arts, 1952, 344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276; Jewell-La Salle Realty Co. v. Buck, 1931, 283 U.S. 202, 51 S.Ct. 407, 75 L.Ed. 978; Westermann Co. v. Dispatch Printing Co., 1919, 249 U.S. 100, 39 S.Ct. 194, 63 L.Ed. 499; Dan Kasoff, Inc. v. Palmer Jewelry Mfg. Co., D.C.S.D.N.Y., 1959, 171 F.Supp. 603; Harms, Inc. v. Sansome House Enterprises, Inc., D.C.E.D. Pa.1958, 162 F.Supp. 129, affirmed Leo Feist, Inc., v. Lew Tendler Tavern, Inc., 3 Cir., 1959, 267 F.2d 494; M. J. Golden & Co. v. Pittsburgh Brewing Co., D.C. E.D.Pa.1956, 137 F.Supp. 455; Edward B. Marks Music Co. v. Borst Music Pub. Co., D.C.D.N.J., 1953, 110 F.Supp. 913.

Section 101(b), provides that the copyright proprietor shall be allowed $1 for each infringing copy of his work of art (except a painting, statue, or sculpture, for which $10 is allowed) made or sold by or found in the possession of the infringer or his agents or employees. Since plaintiffs' Santa is a work of art other

---

6. 47 Cal.Jur.2d, Trademarks, Tradenames, and Trade Practices § 24, pages 740–741.

**950**

than a painting, statute or sculpture, the sum of $1 applies here.

It appears from the evidence that defendant American Cover Co. delivered 2,246 Santa Claus figures to defendant Sunset House and sold 45 elsewhere making a total of 2,291 for which the plaintiffs should be allowed $2,291.

In accordance with the provisions of 17 U.S.C.A. § 101(d), plaintiffs are also entitled to a decree ordering defendants to deliver up for destruction all infringing copies of plaintiffs' work and the means for making same.

 Under 17 U.S.C.A. § 116, it is mandatory for the court to allow "full costs" to the prevailing party, but discretionary with the court as to whether to award a "reasonable attorney's fee" as part of the costs. Official Aviation Guide Co. v. American Aviation Associates, 7 Cir., 1947, 162 F.2d 541; Cloth v. Hyman, D.C.S.D.N.Y.1956, 146 F. Supp. 185; Alexander v. Irving Trust Co., D.C.S.D.N.Y.1955, 132 F.Supp. 364, affirmed 2 Cir., 1956, 228 F.2d 221, certiorari denied 1956, 350 U.S. 996, 76 S. Ct. 545, 100 L.Ed. 860.

As to the considerations which should guide the court in determining whether to allow attorney's fees as part of the costs, it has been held that such fees are awarded to the prevailing party only where dictated by "equity and good conscience." National Brass Co. v. Michigan Hardware Co., D.C.W.D.Mich.1948, 75 F. Supp. 140, 142. As expressed in Cain v. Universal Pictures Co., D.C.S.D.Cal.1942, 47 F.Supp. 1013, at page 1019:

> "[Attorney's fees] should not be awarded unless equity considerations exist which call for the penalization of the losing party. * * *"

Applying these criteria to the facts of this case, plaintiffs should be allowed reasonable attorney's fees as part of their costs. Here, defendants deliberately copied plaintiffs' copyrighted Santa Claus figure. Then, in an effort to capitalize on the good will and reputation enjoyed by plaintiffs' product, they also imitated plaintiffs' advertisements, included a picture of plaintiffs' Santa with their product, and used plaintiffs' registered trademark and trade name. However, defendants' product was inferior to that of plaintiffs and sold for less, with the overall result that defendants not only captured part of plaintiffs' market, but also injured the reputation of plaintiffs' product.

Plaintiffs are entitled to reasonable attorney's fees as part of their costs. The court finds that reasonable attorney fees in this case amount to $1,000.

Counsel for the plaintiffs is directed to prepare, serve and lodge findings, conclusions and judgment pursuant to local Rule 7, West's Ann.Code.