## HARRY ALTER CO., Inc.
### v.
### A. E. BORDEN CO., Inc. et al.
### Civ. A. 51–1112.

United States District Court
D. Massachusetts.
June 7, 1954.

942

Raymond E. Bernard, Cedric W. Porter, Boston, Mass., for plaintiff.

I. U. Townsend, Jr., Emery, Booth, Townsend, Miller & Weidner, Boston, Mass., for defendants.

FORD, District Judge.

This is an action for copyright infringement based on the alleged copying of items from plaintiff's sales catalogs by defendant corporation. Plaintiff (hereinafter designated as Alter) is an Illinois corporation, with a principal place of business in Chicago. Defendants are a Massachusetts corporation (hereinafter designated as Borden), with a principal place of business in Boston, and three individuals who have been or are officers of this corporation. Both Alter and Borden are wholesalers of refrigeration and air-conditioning apparatus, parts and equipment, selling principally by mail to retailers and contractors. Both issue illustrated trade catalogs showing and describing their merchandise. Borden does an annual business of $1,500,000, principally in New England. Alter does an annual business of over $2,000,000 throughout

the United States and in foreign countries. Of its total of 30,000 wholesale accounts, 1,700 are in the New England area.

Between 1933 and 1950, Alter published 49 trade catalogs, all printed from wood engravings and type by standard printing processes. All of these Alter catalogs were published with copyright notice and have been duly recorded in the Copyright Office and certificates of registration have been issued thereon. The work of preparing these catalogs was described by Irving Alter, plaintiff's secretary and treasurer and merchandise manager, under whose direction the work was done. Much time and money has been invested in this preparation, especially in the condensing of information supplied by manufacturers into concise and accurate descriptions of the various items, and in preparing wood engravings for the illustrations of these items. Since items are frequently being added to or dropped from Alter's stock, and prices or specifications of items frequently change, Alter finds it desirable to issue a new catalog about three times a year. Much of the material in each catalog is, of course, repeated from previous catalogs. There was testimony that the cost of preparing a typical new page embodying changes from previous catalogs runs from $357 to $383. In 1950, the cost of putting out a new catalog which was entirely restyled and reprinted was $44,960. There was testimony that if, in addition, all of the wood engravings and descriptions of items had been newly prepared, the cost would have been $94,306.94.

The Alter catalogs are widely distributed to its customers throughout the world and to other dealers. Borden has received them regularly. They are regarded as among the best catalogs in the refrigeration industry. Colleges and trade schools place them in their libraries, and the Quartermaster Department of the United States Army in making up bids on refrigeration and air-conditioning equipment frequently uses Harry Alter stock numbers to designate items, specifying, e. g., Harry Alter Co. No. ―― or equivalent.

Borden has published three trade catalogs. About 2,800 copies of A-45 were published in July, 1945, 3,000 copies of B-48 in July, 1948, and 3,000 copies of C-50 in 1950. These catalogs were produced by the photo-offset printing method. In this method a layout sheet for a page is prepared by pasting onto the sheet pictures and illustrations obtained from other sources together with printer's proof of the accompanying text. These sheets are then photographed and reproduced on paper by standard offset lithography. Such a method is much less expensive than Alter's method of using wood engravings and standard printing processes. The actual printing of the catalogs was done for Borden by The Stentor Company of Hartford for the A-45 catalog, by Stentor's successor, the Edward Owen Company for the B-48 catalog, and by Topping House of Boston for the C-50 catalog.

Plaintiff has presented detailed charts (Exhibit 11) of the alleged instances of copying together with a summary (Exhibit 6) of the information contained in these charts, indicating a total of 541 instances of copying of either an illustration or a description from one of the Alter catalogs in one of the Borden catalogs. Borden contends this total is greatly exaggerated. The basis for this is the fact that the Alter charts were prepared in two parts, one for copying of illustrations and one for copying of descriptions. Thus where Borden copied an entire Alter item, both illustration and descriptive wording, this is indicated in both sections of the Alter chart, thus appearing as two instances of copying. In other cases, an illustration found once in an Alter catalog appears twice in a Borden catalog. So long as it is clear what was actually copied, it appears of little moment whether it is called one or two instances of copying. In any event, as will appear later, the number of separate infringe-

ments will not be increased by saying in any of these situations that there were two instances of copying rather than one.

There is no need for a detailed discussion of these copyings. While Borden does not admit copying, it does concede that there is a sufficient similarity (for which Borden offers no explanation) between the Alter originals and the corresponding items in the Borden catalogs to warrant a finding that the Borden items were copied from the Alter items. A comparison of these items leaves no doubt as to the fact that these accused Borden illustrations were prepared by pasting illustrations from the Alter catalog onto the layout sheets used in making the Borden catalog. In some instances these illustrations were taken just as they appeared in the Alter catalogs, in some cases parts of the Alter illustration were combined with parts of illustrations from other sources, and in other instances the Alter illustration was cut up and the parts rearranged to produce an illustration superficially different from the Alter original. Plaintiff has prepared numerous enlargements on transparent film of the corresponding Borden and Alter illustrations which can be superimposed to show an exact similarity between them down to the most minute lines and dots of the Alter wood engravings.

There is a like similarity of detail in the alleged copying of descriptions. Not only do the Borden descriptions reproduce the Alter descriptions word for word, or with only slight rearrangement of the Alter wording, but there are exact similarities in minute details of punctuation which cannot be explained as mere coincidence. For instance, the Alter catalog designates certain standard fittings, sometimes as "S.A.E. fitting", as "S.A.E. flare", or as "S.A.E. flared" using these various equivalent descriptions arbitrarily. Sometimes the designation appears as "S.A.E." with periods, sometimes as "SAE" without periods. The Alter catalog generally uses the abbreviation "ft." for "foot" or "feet", but inconsistently it uses the symbol ″ instead of the abbreviation "in." for "inch" or "inches". Comparison of the accused Borden descriptions with the Alter originals shows that in every instance these peculiarities of the Alter description are reproduced exactly in the Borden description. Similarly where Alter assigned to an item its own stock number different from the manufacturer's stock number, it is the Alter number which is assigned to the same item in the Borden catalog. In view of these detailed similarities the only possible finding is that the Borden illustrations and descriptions listed in Exhibit 11 were copied from the corresponding original material in the Alter catalogs.

A more difficult problem is presented in the question of how many distinct copyright infringements are constituted by these numerous instances of copying. In the light of the case of Markham v. A. E. Borden Co., Inc., 1 Cir., 206 F.2d 199, the basic principles of law to be applied in deciding the question are clear. The Alter catalogs are works made up of original descriptions and illustrations of separate items of Alter's stock in trade. Each such item in the catalog is a component part protected by 17 U.S.C.A. § 3. The material and substantial copying of even one such item is sufficient to constitute an infringement of the copyright. There is, however, only a single copyright on each of the Alter catalogs, protecting all the component parts of that catalog, and hence with respect to the copying by any one Borden catalog of any Alter catalog there can be only one infringement, whether the copying was of one item, several items, or the whole catalog. Moreover, each copying of one of the Alter catalogs by each separate Borden catalog is a separate infringement of that Alter catalog. Where component items were first published in one copyrighted catalog, on which this original copyright is still subsisting, they are also protected as component parts by

the copyright on a later catalog in which they are included. 17 U.S.C.A. § 3.

The parties do not agree, however, on the application of these principles to the specific facts here. As has been pointed out, while each Alter catalog contains substantial amounts of new material, it also contains much that is repeated from earlier catalogs. Most of the illustrations and descriptions copied by Borden have appeared in the same form in many successive Alter catalogs. Mere comparison of the Borden copy with the Alter catalogs can, of course, give no indication which of these catalogs was the source of the copying for any particular item. That is a matter solely within the knowledge of either Borden or the firm which prepared its catalog for it. No direct evidence was offered as to which Alter catalog was copied in any particular case.

It is plaintiff's contention that in these circumstances, where the copied item has appeared in several catalogs, it should be considered that the catalog in which it first appeared is the one which was copied and that it is the copyright on that catalog, that is, the original copyright protecting this particular item, which was infringed. The charts of Exhibit 11 are so arranged as to show for each of the instances of copying listed the Borden catalog or catalogs in which it appears and also the Alter catalog in which the copied material was originally published. These charts, as summarized in Exhibit 6, show that the original publications of the copied items were made in 27 different Alter catalogs. Borden catalog A–45 copied items first appearing in 20 of these, B–48 items first appearing in 23 of them, and C–50 items first appearing in 24. Therefore, Alter contends, the instances of copying amount in all to 67 separate infringements of Alter catalog copyrights.

Borden points to the fact that every item copied in Borden's A–45 catalog can be found in Alter's catalog 139, every item copied in Borden's B–48 cat-alog can be found either in the same Alter 139 catalog or the Alter 145 catalog, and every item copied in Borden's C–50 catalog can be found in one of these two Alter catalogs except for one illustration which is found in Alter's 150 catalog. Hence, Borden argues, there can be found at most six infringements.

Plaintiff relies on Markham v. A. E. Borden Co., Inc., D.C., 108 F.Supp. 695, to support its contention that the first appearance of each item is the one which was infringed. But the court in the Markham case went no further than to say that under the circumstances of that case it would trace each item back to its original publication in order to prevent plaintiff from unduly multiplying infringements by arbitrarily and unrealistically assigning the standard items appearing in a long series of catalogs, among the various catalogs so as to constitute a maximum number of infringements. But the court specifically pointed out, at page 705, that the plaintiff could base its claim on any of a series of publications and not necessarily on the first one, where it sought to hold the defendant for only one infringement, and, further, that it could show such facts as the juxtaposition of standard items with items found only in one of the series of copyright publications, as evidence of the publication which was actually copied.

In the present case, it would be highly unrealistic to suppose that Borden went through the whole series of Alter catalogs to select the first appearance of each item as the one to be copied. The logical assumption would be that when Borden wanted to copy Alter material it would turn to the current Alter catalog as its source. When, in fact, the Alter catalog 139, published April 5, 1944, and the one currently in use when Borden was preparing its A–45 catalog, contains every bit of Alter material which was copied in the A–45 catalog, the only reasonable inference is that it was the Alter catalog

139 which was actually used by Borden, and that it is this catalog alone which was infringed. Of the numerous instances of copying found in the Borden B–48 catalog most are merely repetitions of the copying in the A–45 catalog. The new copying in B–48 is of items which all appear in Alter's catalog 145, published September 11, 1947, and thus the Alter catalog to which Borden would naturally turn for further Alter material for copying. Similarly every accused item in C–50 is a repetition of a copying in one or both of the earlier Borden catalogs, except two items first appearing in Alter catalogs after Alter 145, and both found in Alter 150, published June 3, 1949 and thus current when Borden C–50 was being prepared. The reasonable inference from these facts is that what Borden actually did was to copy from the Alter catalog currently in use the Alter material which it desired to use. Thus it is unnecessary to resort to the plaintiff's suggestion that the copying should be arbitrarily assigned to the Alter catalogs in which the items were originally published. To do so would multiply the number of infringements far beyond the actual extent of Borden's wrongdoing. The finding is that Borden by its A–45 catalog infringed Alter catalog 139, by its B–48 catalog Alter catalogs 139 and 145, and by its C–50 catalog Alter catalogs 139, 145 and 150.

■ Borden, while denying any copying in its catalogs, has also taken the position that if any copying was done, it was done by the firms whom Borden hired to put out the catalogs for it, and that no one connected with Borden knew of the copying or took any part in it. (Borden, of course, concedes that even if this is true, Borden, as distributor, is still liable as a joint tortfeasor with its printer for any infringement that has been committed.) Chester Borden testified that several Borden employees, and he himself more than anyone else, did work in connection with the preparation of the catalogs, but that this work was confined to assembling manufacturers' literature to be used, and in checking the finished work to see that it correctly represented Borden stock. The firms preparing these catalogs were general advertising agencies, and not engaged in the refrigeration industry. From the numerous instances of copying which have been found, it is clear that all the illustrations and descriptions in the Borden catalogs were not derived from manufacturers' literature. It is difficult to believe that Borden would have left all the work of selecting technically correct illustrations and descriptions in the hands of an advertising agency which had no special technical knowledge of the refrigeration business. This is especially true of the instances where an illustration of an item not found in the Alter catalog was prepared by cutting out and pasting together parts of the illustrations of several Alter items. This certainly required a technical familiarity with the Borden products which could have been furnished only by Borden and not by its advertising agency. The finding is that Borden, and the individual defendant Chester Borden, knew of and took part in the actual copying of the Alter catalogs.

As to the other individual defendants, there was no evidence that they took any part in the preparation of the catalogs, and had no connection with the publication other than being officers, directors, or stockholders of defendant corporation. The action as against them should therefore be dismissed. Buck v. Newsreel, Inc., D.C., 25 F.Supp. 787, 789, and cases there cited.

Borden contends that this action is barred as to Borden catalog A–45 by the applicable six years statute of limitations. Mass.G.L.Ch. 260, § 2.

■ The present action was commenced by the filing of the complaint on November 21, 1951. Catalog A–45 was originally published and distributed to Borden's list of customers in July or August of 1945. Chester E. Borden, Borden's president and treasurer, testi-

fied that the catalog was prepared on the basis of use for eighteen months, so A-45 was used for the last six months of 1945 and the twelve months of 1946. He testified that Borden ran out of copies of catalog A-45 sometime before the end of the eighteen-month period. The best that can be gathered from his testimony is that this happened sometime in 1946. Hence, it must be concluded that catalog A-45 was still being distributed by Borden to its customers at least up to the end of 1945, and hence within the six years previous to the filing of the complaint. Borden's defense of the statute of limitations with respect to A-45 must therefore be rejected.

The statutory provisions governing damages to be awarded for copyright infringement, 17 U.S.C.A. § 101, provide for the recovery of actual damages and profits where they can be satisfactorily proved, or, in the alternative, for an award by the court, in its discretion, of statutory damages within the limits set down in the statute. As applicable to the present case, the award for damages for each infringement may be made at the rate of $1.00 for every infringing copy made or sold by or found in the possession of the infringer or his agents or employees, with damages to be no less than $250 nor greater than $5,000.

Plaintiff concedes that it can offer no evidence to show any definitely identifiable loss of sales or other item of damage resulting from Borden's infringements. On the issue of profits, plaintiff offered testimony by Irving Alter that the estimated savings of Borden through the copyings listed on Exhibit 11 was $14,125. This estimate, however, was based on the assumption that if Borden had not copied Alter's items, it would have had to prepare alternative material for its catalogs using the methods employed by Alter, that is, by having wood engravings made and by pre-paring its own original descriptive texts. Borden, however, does not necessarily appear to have been interested in preparing a catalog of the technical excellence of Alter's catalogs. If it had not copied Alter's work, it is not likely that as to these particular items it would ever have gone to the labor and expense of preparing equivalents to the Alter work. Instead it might well have found less expensive ways, in line with its general choice of a less expensive method of printing its catalog, of preparing descriptions of these items of its stock. Hence, this estimate of Borden's profits will not be adopted as a satisfactory basis for determining the award to be made to plaintiff. In this case, the court in its discretion may resort to the schedule of statutory damages.

As to the infringements by the Borden B-48 and C-50 catalogs of Alter catalogs 139 and 145, damages will be assessed at $3,000 for each infringement, at the statutory rate of $1.00 for each of the 3,000 infringing copies of these Borden catalogs. The infringement by Borden C-50 of Alter 150 consists of the copying of only two items, in comparison with the large number of copyings involved in the other infringements. In the case of the infringement by Borden A-45 of Alter 139, it has been found that copies of this Borden catalog were distributed at least until the end of 1945, so as to defeat Borden's reliance on the statute of limitations. It is not certain how many copies were distributed within the six years prior to suit, and it is likely that substantial numbers were distributed soon after publication in July of 1945. Hence, as to each of these latter two infringements, damages will be fixed at the statutory minimum of $250. Judgment accordingly; costs to include attorney's fee of one thousand ($1,000) dollars. 17 U.S.C.A. § 116.