REXNORD, INC. (by change of name from Rex Chainbelt, Inc.), Plaintiff,

v.

MODERN HANDLING SYSTEMS, INC., Defendant.

Civ. A. No. 4571.

United States District Court,
D. Delaware.

July 10, 1974.

John P. Sinclair, of Potter, Anderson & Corroon, Wilmington, Del., for plaintiff; G. Franklin Rothwell and Charles L. Gholz of Sughrue, Rothwell, Mion, Zinn & Macpeak, Washington, D. C., of counsel.

Douglas E. Whitney and William H. Sudell, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant.

## OPINION

STAPLETON, District Judge:

This action for copyright infringement and unfair competition was brought by Rexnord, Inc., a Wisconsin corporation. Defendant, Modern Handling Systems, Inc., a Delaware corporation, has answered and filed a counterclaim alleging unfair competition and antitrust violations. Presently before the Court are four motions: the motions of both parties for summary judgment in their favor on plaintiff's claim of copyright infringement; defendant's motion for summary judgment, or alternatively judgment on the pleadings on Rexnord's claim of unfair competition; and defendant's motion under F.R.C.P. 37 for an order compelling plaintiff to answer certain interrogatories.

## I. THE COPYRIGHT ISSUE

Plaintiff Rexnord, Inc. ("Rexnord") and its predecessor companies have been engaged in the manufacture of conveyer systems and components since 1905. Beginning in 1939, Rexnord has biennially issued a catalogue depicting its various products and presenting product specifications as well as other information useful to its customers and distributors. These catalogues have been denominated by the year of their issue; for example, the 1939 catalogue is entitled HB-39.

Rexnord's catalogue for 1970, HB-70, is the subject of the copyright which allegedly has been infringed. Evidently, HB-70 was conceived as a more ambitious document than the catalogues it superseded. Physical comparison indicates that it is longer and contains larger pages than its immediate predecessor, HB-68. Moreover, in internal memoranda, Rexnord's vice president for marketing, D. W. Shenton, characterized HB-70

as an attempt "to mesh some twelve to fifteen books we presently have into one which can be made available either in sections or in its entirety, depending on the sales situation" and to "integrate many different manuals which we publish today into . . . one." The identity of the "different manuals" which HB-70 "integrates", and the extent to which it reproduces the content of those manuals, are points of sharp dispute between the parties. At the very least, however, it is accurate to observe that a wide range of products depicted in HB-68 is also depicted in HB-70 and that the visual material and accompanying text in HB-68 and HB-70 contain many similarities.

HB-70 is over 300 pages in length. It is divided into 13 sections, each of which is devoted to a separate category of conveyor products. Typically, each page of HB-70 presents a single product and contains both a visual representation of the product and printed matter indicating the product's physical specifications, the different models in which it is available and its uses. HB-70's inside title page contains a notice of copyright. Before this suit was commenced, Rexnord deposited two copies of HB-70 with the Register of Copyrights and was issued the registration A 370 728. Nevertheless, while prior Rexnord catalogues, including HB-68, have been published with a notice of copyright, neither the deposit of two copies of these catalogues nor the issuance of a registration has ever occurred.

Although all bound copies of HB-70 have included a notice of copyright, it has been Rexnord's practice to disseminate excerpts from HB-70, termed "sectionalized brochures", which do not bear any copyright notice. These sectionalized brochures are exact duplications of corresponding pages in HB-70 and have been freely circulated among customers and prospective customers of Rexnord whose interest is limited to particular Rexnord products.

Defendant Modern Handling Systems, Inc. ("Modhan"), was a distributor of Rexnord products from January 1965 until March 1972, when Rexnord cancelled its distributorship. In 1968, Modhan began manufacturing conveyor equipment and it has gradually emerged as a competitor of Rexnord. Modhan's products are essentially identical to many of the products manufactured by Rexnord and, in many instances, contain equivalent technical specifications. In early 1972, Modhan decided to issue a catalogue of its products. It engaged the Birmingham Publishing Company, Birmingham, Alabama, to prepare and print the proposed catalogue. There is no dispute that included in the many working materials with which Modhan provided its printer was a copy of HB-70. The final catalogue which Modhan issued contains 54 pages and is entitled MS-672.

Rexnord's amended complaint in this action alleges that MS-672 infringes HB-70 in that 52 of MS-672's 54 pages are copied from HB-70. As the basis for its instant motion for summary judgment, it asserts that (1) Modhan's access to HB-70 and its reproduction in MS-672 of errors contained in HB-70 establish that it copied HB-70; and (2) visual comparison of the text and illustrations in the two catalogues establishes the requisite "substantial similarity" between HB-70 and MS-672. Modhan, for its part, does not resist these arguments but rather focuses on establishing two propositions which it believes entitle it to summary judgment: (1) Modhan's printer, but not Modhan, must be held liable for any infringing which may have occurred; and (2) Rexnord's copyright in all of the pages of HB-70 which allegedly have been infringed either has been "forfeited", "abandoned" or is otherwise presently unenforceable.

The affidavits, depositions and documentary evidence submitted by the parties, as well as the catalogues in suit, have enabled the Court to narrow the issues which must be litigated. The Court has concluded, however, that summary judgment is inappropriate.

## A. *Rexnord's Case On Infringement*

■■ After establishing his ownership of a valid and enforceable copyright, the plaintiff in a copyright infringement action has the burden of proving two additional elements. First, since the copyright laws do not prohibit independent creation, the plaintiff must show actual pirating of his work by the defendant. The defendant's access to and knowledge of the plaintiff's work are compelling indicia of such plagarism. Bradbury v. Columbia Broadcasting System, Inc., 287 F.2d 478, 481 (9th Cir. 1961). Likewise compelling evidence on the subject is defendant's use of material identical to material contained in plaintiff's work. Bradbury v. Columbia Broadcasting System, *supra*; Heim v. Universal Pictures Co., 154 F.2d 480 (2nd Cir. 1946). Finally, especially probative of actual copying is the appearance of common errors in the works of plaintiff and defendant. College Entrance Book Co. v. Amsco Book Co., 119 F.2d 874, 875 (2nd Cir. 1941); Adventures in Good Eating v. Best Places to Eat, 131 F.2d 809 (7th Cir. 1942). The defendant's duplication of plaintiff's errors strongly rebuts the inference that mere coincidence is responsible for the similarities between their respective works.

Secondly, once actual copying has been established, it becomes necessary to show substantial and material similarity between the works of the parties. As the Sixth Circuit Court of Appeals defined the concept in Mathews Conveyer Co. v. Palmer-Bee Co., 135 F.2d 73, 84–85 (1943):

". . . From numerous cases it may be concluded that in order to sustain an action for infringement of copyright, a substantial copy of the whole, or a material part, must be reproduced. . . . On the principle of de minimis non curat lex, it is necessary that a substantial part of the copyrighted work be taken.

. . . Among criteria for ascertaining infringement, which have been mentioned by the courts, are whether so much has been taken as would sensibly diminish the value of the original; and whether the labors of the party entitled to copyright are substantially to an injurious extent appropriated by another."

The requirement of actual copying poses no unusual difficulty in the present case. First the deposition testimony of Frank Kovach, Jr., Modhan's president and board chairman, concedes that he and his company were familiar with HB-70. Moreover, the Kovach deposition acknowledges that Modhan's printer, the Birmingham Publishing Co., was furnished a copy of HB-70 before it began preparation of MS-672. Thus, there is unrebutted evidence of "knowledge" and "access". Secondly, visual comparison of the allegedly infringing pages of MS-672 with corresponding pages in HB-70 reveals extensive resemblances. Overall page format is in many instances virtually equivalent; the drawings depicting various products are remarkably similar in scale, shading and detail; and the printed matter identifying product parts, giving product dimensions and describing product properties and uses is frequently duplicated verbatim.

It might be arguable, if highly unlikely, that these resemblances are due to the underlying similarity of Modhan and Rexnord products were it not for the many errors in HB-70 which have been reproduced in MS-672. On a number of occasions, clearly mistaken specifications—i. e., 4' instead of 4"—appear both in MS-672 and HB-70. Furthermore, both catalogues contain common defects in draftsmanship; for example, at analogous points in the depiction of a particular product, a line will be mistakenly discontinued, apparently because of the draftsman's inadvertent erasure. These errors are plain to a lay observer with no technical familiarity with conveyor products. Modhan has offered no alternative explanation for the errors nor, indeed, has it offered any evidence whatever that its catalogue was the

product of independent creation. Standing unrebutted, Rexnord's showing of access, knowledge, extensive duplication of content and common errors leaves no room for any inference other than that Modhan has copied from HB-70.

■■ Ever since the First Circuit's influential opinion in Markham v. A. E. Borden Co., 206 F.2d 199 (1953), it has been settled doctrine that a trade catalogue such as HB-70, comprised of separate representations of distinct products, must be considered a "composite work" within the scope of 17 U.S.C. § 3. See also Hedeman Products Corp. v. Tap-Rite Products Corp., 228 F.Supp. 630 (D.N.J.1964); PIC Design Corporation v. Sterling Precision Corp., 231 F.Supp. 106 (S.D.N.Y.1964). Under the *Markham* reading of Section 3, each product representation has the status of a "component part" and therefore deserves the same protection it would possess if it had been separately copyrighted. Accordingly, the test of "substantial and material similarity" is not the degree of resemblance between defendant's catalogue and the entirety of plaintiff's catalogue. Rather, any product representation in plaintiff's catalogue may be segregated and juxtaposed against the portions of defendant's catalogue that allegedly infringe it. If that comparison discloses a "substantial and material similarity", an infringement of plaintiff's

copyright in his entire catalogue will be deemed established.

■ Thus, in the present case it is necessary to compare each of the allegedly infringed pages of HB-70 to the corresponding pages of MS-672. For each such page and its counterpart, the inquiry at this stage must be whether "substantial and material" similarity exists as a matter of law—that is, whether the only conclusion that an "ordinary observer"[1] of the two catalogues could reasonably reach is that they possess the requisite similarity. F.R.C.P. 56(c).

■ With respect to the great majority of the allegedly infringed pages of HB-70, this inquiry requires an affirmative response.[2] These pages are reproduced virtually intact in MS-672. Their overall format—i. e., the arrangement of illustrations and text on the page—is carried forward into MS-672 without significant modification. Also slavishly duplicated in MS-672 are the product depictions that these pages contain; comparable depictions in MS-672 are altered only in such trivial details as shading and emphasis. Finally, the printed matter on these pages is likewise equivalent in MS-672; carried forward with only minor changes are the wording and placement of the part identifications which accompany the product depictions, the discussions of product uses and properties which generally appear be-

---

1. The eyes through which "substantial and material similarity" is to be judged are those of the general audience for whom the copyrighted work was intended and not those of the experts in the field. Arnstein v. Porter, 154 F.2d 464 (2nd Cir. 1946).

2. The following pages of HB-70 fall into the category of pages as to which substantial similarity with MS-672 exists as a matter of law. They are listed along with their counterpart pages in MS-672.

| HB—70 | MS—672 | HB—70 | MS—672 |
|---|---|---|---|
| 2B–1 | 1 & 2 | 5D–3 | 33 |
| 2B–2 | 2 | 5D–6 | 34 |
| 2B–3 | 2 | 5E–1 | 35 |
| 3D–3 | 10 | 5E–2 | 36 |
| 4B–1 | 11 | 5E–3 | 37 |
| 4B–2 | 12 | 5E–6 | 38 |

| HB—70 | MS—672 | HB—70 | MS—672 |
|---|---|---|---|
| 4B–4 | 13 | 5E–7 | 39 |
| 4B–5 | 14 | 5E–8 | 40 |
| 4B–7 | 15 | 5E–4 | 41 |
| 4B–9 | 16 | 5E–5 | 42 |
| 4B–22 | 17 | 5E–9 | 43 |
| 4B–27 | 18 | 6B–6 | 44 |
| 4B–10 | 19 | 6B–5 | 44 |
| 4B–19 | 21 | 6B–11 | 45 |
| 4B–17 | 22 | 6B–10 | 46 |
| 5B–1 | 23 | 10B–11 | 47 |
| 5B–2 | 24 | 10B–22 | 48 |
| 5B–3 | 25 | 10B–18 | 49 |
| 5B–4 | 26 | 10B–26 | 50 |
| 5B–9 | 27 | 1C–5 | 50 |
| 5D–8 | 28 | 10B–5 | 51 |
| 5D–2 | 29 | 10B–4 | 52 |
| 5D–9 | 30 | 10B–11 | 53 |
| 5D–6 | 31 | 10B–15 | 54 |
| 5D–7 | 32 | | |

neath the depictions, and the tables of different models and their specifications which appear at the sides of many pages. Although some pages in MS-672 contain limited rearrangements of printed matter, and all pages in MS-672 employ a different type-face, these differences must be considered *de minimis*.

The Court reaches a different conclusion with respect to the remainder of the allegedly infringed pages in HB-70.[3] The pages of MS-672 corresponding to these pages differ significantly in text, illustrations, overall format or all three. Whether there is nevertheless "substantial and material similarity" is a question about which ordinary observers might disagree; that question must therefore be reserved for the jury at trial. Arnstein v. Porter, 154 F.2d 464 (2nd Cir. 1946).

### B. *Modhan's Defenses*

■ Although substantial similarity between any *one* of HB-70's pages and MS-672 is sufficient to establish actionable copying, Rexnord may nevertheless be unable to recover for infringement (1) if Modhan cannot be held liable for that copying, or (2) if none of the copied pages of HB-70 are protected by a presently enforceable Rexnord copyright in HB-70.

Modhan maintains that liability for any infringement of HB-70 can only be imputed to its printer, the Birmingham Publishing Company. Defense affidavits indicate that Birmingham Publishing Company was an independent contractor and that it was furnished with sufficient non-infringing material by Modhan to enable it to print an entire catalogue without drawing on the content of HB-70. In addition, while Modhan concedes that it supplied Birmingham with a copy of HB-70, it maintains that it instructed Birmingham not to infringe HB-70 and that, before and after publication, it trusted in Birmingham's good faith as well as the assurances of Birmingham's counsel that this instruction was in fact obeyed.

■ Even if they were accepted at their face value, these facts would be decidedly inadequate to relieve Modhan of liability as an infringer of HB-70. Modhan caused MS-672 to be printed and thereafter published it. This would be a sufficient basis for imposing liability even in the absence of knowledge of the copying. Greenbie v. Noble, 151 F. Supp. 45, 63 (S.D.N.Y.1957). In addition, Modhan was in a position to police the contents which Birmingham included in MS-672 and clearly expected to derive substantial financial reward from its circulation. These two circumstances— the ability to control the contents of the infringing work and a financial stake in its dissemination—are sufficient to impose liability even where a defendant has had no direct personal role in printing or publishing and was unaware of the copying. As the Second Circuit has expressed the doctrine: "When the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of the copyrighted materials—even in the absence of knowledge that the copyright monopoly is being impaired . . . the purposes of the copyright law may be best effectuated by the imposition of liability upon the beneficiary of that exploitation." Shapiro, Bernstein & Co. v. H. L. Green Company, 316 F.2d 304, 307

3. The following pages fall into the category of pages as to which substantial similarity with MS-672 is an issue to be determined at trial. They are listed with their alleged counterpart pages in MS-672.

| HB—70 | MS—672 |
|-------|--------|
| 3B–1  | 5      |
| 3B–6  | 6      |
| 3B–8  | 7      |
| 3B–11 | 8      |
| 3B–12 | 9      |
| 4B–13 | 20     |
| 4B–16 | 20     |
| 4B–19 | 49     |

(2nd Cir. 1963); See also Gershwin Publishing Corp. v. Columbia Artists Man. Inc., 443 F.2d 1159 (2nd Cir. 1971).

Modhan's second defense is that Rexnord's copyright in all of the pages of HB-70 which allegedly have been infringed either has been "forfeited", "abandoned" or is otherwise presently unenforceable. The four phases of this argument will be considered separately.

First, Modhan urges that Rexnord has "forfeited" its copyright in the thirty-five allegedly copied pages of HB-70 which were published as "sectionalized brochures" with no notice of copyright.[4] The Court agrees.

■ Copyrighted material loses its protected status if it is published without notice of copyright. National Comics Publications, Inc. v. Fawcett Publications, Inc., 191 F.2d 594 (2nd Cir. 1951); Klasmer v. Baltimore Football Club, 200 F.Supp. 255 (D.Md.1961). An exception to this doctrine exists for material whose publication can be characterized as "limited", but to qualify as a "limited publication", the publication must "communicate the contents of a manuscript to a definitely selected group and for a limited purpose, without the right of diffusion, reproduction, distribution or sale." White v. Kimmell, 193 F.2d 744 (9th Cir. 1952).

■ It is evident that Rexnord's circulation of its brochures cannot satisfy this definition. The brochures were freely available to customers and prospective customers of Rexnord; thus, the audience to which they were disseminated can hardly be regarded as restricted. Nor was the purpose for which the brochures were circulated a limited one. They served the same function as HB-70 itself—to generate purchaser interest in, and impart sales information about, Rexnord's products. Finally, Rexnord has not suggested that the recipients of the brochures were re-quired, either explicitly or implicitly, to maintain their confidentiality. So far as the current record reflects, Rexnord placed no conditions on either the use of the brochures or further communication of their contents.

Rexnord contends that its failure to affix a notice of copyright to the sectionalized brochures is excusable as an "accident" or "mistake" within the purview of 17 U.S.C., Section 21. It grounds this contention on the sworn statement of its former Advertising and Sales Manager that he believed the sectionalized brochures "incorporated the copyright of HB-70 by reference" since each page of those brochures indicates the page of HB-70 which it duplicates.

■ Section 21 excuses the omission of notice from "particular copies" only where the "copyright proprietor has sought to comply" with his responsibility to give notice and where its absence is due to his "accident or mistake". As the statutory language suggests and as the cases recognize, the copyright proprietor must intend that the defective copies of his work will bear the requisite copyright designation. The omission of that designation must occur despite his efforts to the contrary; it must be, in short, inadvertent. See Gerlach-Barklow Co. v. Morris & Bendien, Inc., 23 F.2d 159 (2nd Cir. 1927); National Comics Publication, Inc. v. Fawcett Publications, Inc., 191 F.2d 594 (2nd Cir. 1951); Kramer Jewelry Creations v. Capri Jewelry, 143 F.Supp. 120 (S.D.N.Y. 1956). The statement of Rexnord's Advertising and Sales Manager indicates plainly that the omission of notice from the sectionalized brochures was not inadvertent but deliberate, based on his erroneous belief that notice was simply not legally necessary. Such mistakes of law are incompatible with the attempt at compliance on which Section 21 insists and hence cannot comprise the kind of

4. The following allegedly infringed pages of HB-70 fall into this category: 5B-9, 5D-8, 5D-2, 5D-9, 5D-6, 5D-3, 5B-6, 5E-1, 5E-2, 5E-3, 5E-6, 5E-7, 5E-8, 5E-9, 6B-5, 2B-1, 2B-2, 2B-3, 3B-6, 3B-8, 3D-3, 4B-1, 4B-5, 4B-7, 4B-9, 4B-22, 4B-21, 4B-10, 4B-13, 5B-1, 10B-4, 10B-5.

mistake or accident that Section 21 will excuse. *Cf.,* Wildman v. New York Times, 42 F.Supp. 412 (S.D.N.Y. 1941); Puddu v. Buonamici Statuary, Inc., 450 F.2d 401 (2nd Cir. 1971).

Modhan's next purported ground for "forfeiture" is a variant of the argument it has pressed with respect to the sectionalized brochures. It urges that the remaining pages of HB-70 allegedly infringed by MS-672 have also been published without notice of copyright. This publication is asserted to have occurred in a variety of formats—among them, bulletins of types of Rexnord standard products, sales manuals, data books and special brochures prepared for Rexnord's engineering department. Determination of this issue at this point is inappropriate for two reasons. First, the record is unclear as to which, if any, of the allegedly infringed pages of HB-70 were published in these documents. Second, substantial factual dispute exists as to whether the circulation of these documents was sufficiently restricted to be considered a "limited publication" for which notice of copyright was unnecessary. Thus, resolution of these two questions must await trial.

Modhan's third argument is bottomed on the contention that thirty-eight of the infringed pages of HB-70 were derived from HB-68.[5] Accordingly, says Modhan, any protection these pages possess must come from Rexnord's copyright of HB-68. Yet, Modhan concludes, the protection of the HB-68 copyright is unavailable both because Rexnord has neglected to deposit and register HB-68 and because it has pleaded an infringement only of HB-70 and not HB-68. Even assuming that, as to these thirty-eight pages, HB-70 is in fact derived from HB-68,[6] this argument must be rejected as a matter of law.

For present purposes, the Court will assume that HB-70 and HB-68, as compared with their respective predecessors, each embodies a "distinguishable variation" and is therefore copyrightable. Alfred Bell & Co., Ltd. v. Catalda Fine Arts, Inc., 191 F.2d 99 (2nd Cir. 1951); Nimmer, The Law of Copyright, Section 40. On this assumption, Rexnord acquired a valid copyright in HB-68 and HB-70 at the time of their respective publications with notice of copyright. Deposit and registration, while preconditions to the maintenance of an infringement action, were not required in order to obtain a copyright on HB-68. Washingtonian Pub. Co. v. Pearson, 306 U.S. 30, 59 S.Ct. 397, 83 L.Ed. 470 (1939). Thus, at the time Rexnord obtained its copyright on HB-70, it had subsisting protection covering its HB-68 material.

The question, accordingly, is whether a copyright on a catalogue which incorporates derivative material still protected by the same author's earlier copyright protects against another's copying from the later work material derived from the earlier one. While this question has arisen infrequently, and never so far as this Court has ascertained in this precise context, the better view would require an affirmative answer.

Clearly, the copyright law contemplates that a catalogue which, like HB-70, derives in large part from earlier catalogues, may be protected. Here there has been actual copying of such a catalogue. The author of that work has taken each step called for by the statute to secure a copyright and render it judicially enforceable. Section 3 of the statute stipulates that a copyright shall "protect all the copyrightable component parts of the work copyrighted, *and all matter therein on which copyright is already subsisting,* but without extending

---

**5.** Substantial overlap exists between these pages and the pages of HB-70 republished as sectionalized brochures. Only sixteen pages are not contained in both categories.

**6.** Modhan uses the term "copied" rather then "derived". Rexnord accurately insists that

these pages have been derived from HB-68 since several, albeit minor, differences are observable between the corresponding portions of the two catalogues.

the duration or scope of such copyright." (Emphasis supplied.) It would therefore seem consistent with the statutory scheme, as well as with the language of Section 3, to conclude that the copyright on HB-70 protects material contained therein but derived from HB-68. As has elsewhere been observed, a contrary conclusion would lead to the anomalous result that an infringer making a single copy of the latest in a series of copyrighted catalogues would be guilty of a multitude of infringements, the exact number depending upon how many segments of the material first appeared in a different prior catalogue. Harry Alter Co. v. A. E. Borden Co., 121 F.Supp. 941 (D.Mass.1954). *Cf.*, Wrench v. Universal Pictures Co., 104 F.Supp. 374 (S.D.N.Y.1952); B & B Auto Supply, Inc., v. Plesser, 205 F.Supp. 36 (S.D.N.Y.1962).

Finally, Modhan urges that three aspects of Rexnord's conduct compel a holding that it has "abandoned" its copyright in HB-70. The "abandonment" of a copyright, as distinguished from its "forfeiture", turns on the state of mind of the copyright proprietor and will occur whenever he engages in "some overt act which manifests his purpose to surrender his rights in the 'work' and to allow the public to copy it." National Comics Publications v. Fawcett Publications, 191 F.2d 594, 598 (2nd Cir. 1951). Here, Modhan finds evidence of an intention to abandon HB-70 in Rexnord's distribution of the sectionalized brochures without notice of copyright, in its delay in depositing and registering HB-70, and in its permitting another of its competitors to copy a portion of HB-70. However, Rexnord has an explanation for each of these events which is entirely consistent with an absence of an intention to abandon. Summary judgment is, accordingly, inappropriate.

## II. THE UNFAIR COMPETITION ISSUE

Modhan seeks summary judgment on Rexnord's unfair competition claim. That claim is set forth in the amended complaint, as follows:

"14. Mathews developed the information contained in the copyrighted book and the corresponding price list at great expense.

15. On information and belief Modhan copied the wording and format of the Mathews price list and discount schedule sheet but changed the exact prices to a few cents less and increased the discount on most items by 5%.

16. Modhan then contacted many of Mathews distributors and provided them with the Modhan catalogue, price list and discount schedule sheet representing directly (on information and belief) and inferentially that the Modhan products were the same as the products in the Mathews copyrighted catalogue, differing only in price.

17. On information and belief, Modhan has directly or indirectly represented to other Mathews' customers and potential customers that the products shown in the Modhan catalogue are the same as the products in the Mathews copyrighted catalogue differing only in price."

It is apparent from these allegations that Rexnord asserts neither "palming off" nor misrepresentation on the part of Modhan. This is confirmed in the deposition of David W. Shenton, Rexnord's Marketing Vice President:

"Q What were the major factors in bringing suit?

A I think it is wrong for them to have copied verbatim our designs and our copyrighted handbook and enter the market place purportedly with, 'Folks, you can get Mathews equipment, same paint, same design, here it is right out of the catalogues, less money, whatever.' "

\* \* \* \* \* \*

"Q Were they actually representing that this was Mathews equipment, or were they representing that it was equivalent to Mathews equipment?

A The same as Mathews, less money.

Q But not Mathews?

A No, they didn't—I did not say they represented that it was Mathews equipment. Like when they were selling our product, they represented that they could buy the same equipment from them, they could buy it for less, but they get the same design.

Q But it was clear to these people that they were talking about Modhan equipment that was a duplicate of Mathews equipment, and not Mathews equipment?

A Yes, I think there was enough feedback from the market place, and it was consistent enough from all over so that there was no question that this was their approach.

Q But none of your customers, to your knowledge, were confused into thinking they were buying your equipment from Modhan, were they?

A No, I wouldn't say that. I don't have any evidence or feeling that that was true, that they thought they were buying Mathews equipment. They thought they were buying a copy of Mathews equipment.

Q At a lower price?

A For less money. Generally for less money.

Q But they knew from whom they were getting equipment, who was making the equipment?

A Yes. I will say that that is true."

Modhan relies upon this testimony in support of its motion for summary judgment. Rexnord has submitted nothing which contradicts its Vice President's version of Modhan's conduct and its effect on the market place. Under that undisputed version of the facts, Modhan is entitled to summary judgment.

Modhan has apparently represented in the marketplace that it will supply equipment like that of Rexnord's but at a lesser price. Rexnord concedes in its brief that such conduct is not unfair competition. The only additional charge is that in the course of pursuing this strategy Modham copied Rexnord's catalogue and pricing list, saving itself the expense of independent development. Such copying is actionable, if at all, under the copyright laws. It is not unfair competition. G. Ricordi & Co. v. Haendler, 194 F.2d 914 (2nd Cir. 1952). *Cf.*, Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); Compco Corporation v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S. Ct. 779, 11 L.Ed.2d 669 (1964).

### III. DISCOVERY

The final matter for disposition is Modhan's motion under F.R.C. P. 37 for an order directing Rexnord to answer certain interrogatories propounded to it. After examining the interrogatories at issue as well as Rexnord's response thereto, the Court is satisfied that, save in one respect, Rexnord has properly invoked the option, available to it under F.R.C.P. 33(c), of specifying the documentary materials from which answers may be elicited and affording Modhan the opportunity to inspect them. The one exception to this conclusion relates to interrogatories 21(c), 21(d) and 21(e). As the Court understands Rexnord's brief and oral argument, it tacitly concedes that there were materials used in the preparation of HB-70 (e. g., sales manuals and engineering sheets from "data books") which were not mentioned in Rexnord's answer to 21(c). As a result of this omission, Rexnord's answers to 21(d) and 21(e) do not reveal the extent, if any, of the publication of these documents. Rexnord will be ordered to file complete answers to interrogatories 21(c), 21(d) and 21(e). No costs or attorneys' fees will be awarded at this time.

The cross-motions for summary judgment on the issue of copyright infringement will be denied. Defendant's motion for summary judgment of plain-

tiff's unfair competition count will be granted. Except as indicated herein, defendant's motion to compel discovery will be denied.

Submit order.