EISENMAN CHEMICAL COMPANY, a Colorado corporation, plaintiff,

v.

NL INDUSTRIES, INC., a New Jersey corporation; and The 25 Corporation, Inc., a Kansas corporation, defendants;

The 25 CORPORATION, INC., a Kansas corporation, [counterclaim filed 5/28/82]; and NL Industries, Inc., a New Jersey corporation, [counterclaim filed 6/3/82]; Counterclaim Plaintiffs,

v.

EISENMAN CHEMICAL COMPANY, a Colorado corporation, Marvel-Jenkins Ranches, a Nevada co-partnership, The Estate of Louise M. Marvel, Richard T. Marvel, Mary O. Marvel, Thomas J. Marvel, Rosita P. Marvel, John W. Marvel and Wilburta S. Marvel, in their individual capacities, and as partners in Marvel-Jenkins Ranches; Marvel Minerals, a Nevada co-partnership; Marsha M. Grant, Richard J. Marvel, Thomas P. Marvel, Susan M. Barnes, Michael G. Marvel, Sally M. Holman, Joseph C. Marvel, Peter J. Marvel, Amy L. Marvel, Sharon M. Andreasen, John E. Marvel and Michelle M. Slagel, in their individual capacities, in their capacities as Trustees, and in their capacities as partners in Marvel Minerals, Counterclaim Defendants.

No. CV–R–81–201–ECR.

United States District Court, D. Nevada.

July 30, 1984.

David R. Hoy, Hoy & Miller, Chartered, Reno, Nev., John C. Miller, Elko, Nev., F. Alan Fletcher, E. Scott Savage and Samuel O. Gaufin of VanCott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for plaintiff.

John E. Marvel, Elko, Nev., for Marvel Group.

Earl M. Hill, Frank Cassas of Hill, Cassas, deLipkau -& Erwin, Reno, Nev., and Richard L. Bond, Stephen B. Camhi, and James R. Kahn, New York City, for NL Industries, Inc.

E. Pierre Gezelin, Reno, Nev., and Stephen Alfers, Neil Peck, Gale Miller, David K. Isom, and Gail L. Wurtzler of Davis, Graham & Stubbs, Denver, Colo., for The 25 Corporation.

### MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., District Judge.

NL Industries, Inc. (NL) has moved for a partial summary judgment, as to liability but not as to damages, on its First Counterclaim against Eisenman Chemical Company (Eisenman). That Counterclaim alleges that Eisenman infringed the copyright on NL's Baroid Phase II Manual, which has been used by NL as a training manual in instructional courses on the application and use of drilling muds. The students pay to take those courses. Allegedly, Eisenman hired away two NL employees who had been instrumental in developing the courses. Those employees then purportedly prepared for Eisenman a Drilling Fluids

Training Manual, which was used by Eisenman in conducting for-profit instructional courses on the application and use of drilling muds. The counterclaim contends that Eisenman's manual consisted primarily of sections copied from NL's copyrighted manual.

Both sides have presented affidavits, documents, discovery materials, exhibits and memoranda of points and authorities. The Court feels fully advised and in position now to rule on the motion.

■ Summary judgment is proper when, viewing the evidence and the inferences therefrom in the light most favorable to the opposing party, the movant is clearly entitled to prevail as a matter of law. *Gaines v. Haughton*, 645 F.2d 761, 769 (9th Cir.1981); *Knickerbocker Toy Co., Inc. v. Genie Toys, Inc.*, 491 F.Supp. 526, 528 (E.D.Mo.1980). It is no longer good law to hold that summary judgment may not be granted when there is even the slightest doubt as to the facts. *Beal v. Lindsay*, 468 F.2d 287, 291 (2nd Cir.1972). The opposing party must show that it can produce at trial substantial evidence in support of its position; enough evidence merely to raise a suspicion of the existence of a state of facts is not sufficient. *Knickerbocker Toy Co., Inc. v. Genie Toys, Inc., supra* at 528.

*Copyright Infringement*

Eisenman has insisted that the Baroid Phase II Manual was first published in 1975. The effective date of NL's registration of that Manual with the United States Copyright Office was January 8, 1981. For a certificate of registration to constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate, the registration must have occurred within five years after first publication. 17 U.S.C. § 410(c). However, NL has clearly established that its Baroid Phase II Manual was first published in October 1976. What it had been using in 1975 and until publication of the Baroid Phase II Manual in 1976 was a prior manual (hereinafter referred to as Prior Manual)

that dealt with the same subject matter and also was used in instructional courses. The Prior Manual never was copyrighted.

It is Eisenman's position that both its own manual and the Baroid Phase II Manual independently were based on a manual published earlier by Mager Associates, Inc. One of the NL employees who was hired away by Eisenman, and who helped in the preparation of both parties' manuals, had used the Mager Associates manual in 1975. The Mager manual utilized a modular system of criterion-referenced instructions, as do the NL and Eisenman manuals. It is apparent, however, that the Mager manual was not devoted to the application and use of drilling muds. If anything was derived from it, it could only have been the idea of using such an instructional system. The module presents the student with specific learning objectives and provides a criterion test by which he may gauge his grasp of the subject matter.

Eisenman also contends that its manual was not based on the Baroid Phase II Manual at all, but that the uncopyrighted Prior Manual was referred to during the preparation of the Eisenman manual. A comparison among the three manuals refutes this contention. First, there are substantial differences between the Prior Manual and the Baroid Phase II Manual. A number of new modules were included in the latter, and some modules used in the former were deleted entirely. Many of the modules found in both manuals were rewritten before being incorporated into the Baroid Phase II Manual. There were significant revisions to the text, as well. The order of presentation was rearranged between manuals, and a new alphanumeric system of designating modules was adopted for the Baroid Phase II Manual.

Second, a side-by-side comparison between the Eisenman manual and the Baroid Phase II Manual reveals copious amounts of copying. Even the same alphanumeric designations are used in both manuals. Format, wording, tables, graphs, drawings and/or sketches found in the Baroid Phase II Manual obviously were copied in the

Eisenman Manual for at least forty modules.[1] Among them are C–1, C–C2, M–3B and M–A2, which weren't even to be found in the Prior Manual. In addition, typographical errors were copied from the Baroid Phase II Manual into the Eisenman manual. In M–OA the title "Round of Numbers" is found in both, although "Round Off Numbers" is the correct title. The word "gauges" is misspelled as "guages" in both versions of M–O'A. In M–4A, the word "nongauge" is found as "nonguage" in the two manuals. Finally, there is a marked similarity in the outside resource materials to which the students are referred by both manuals.

■ The Copyright Act of 1976, 17 U.S.C. §§ 101 et seq., applies to any cause of action arising from "undertakings" commenced January 1, 1978 or later. 17 U.S.C. § 301(b)(2). Infringements are "undertakings." *Mention v. Gessell*, 714 F.2d 87, 90 (9th Cir.1983). The Eisenman manual was distributed to students in its drilling mud instructional courses between January 1979 and June 1980. Therefore, federal copyright law, rather than common law or state law, is controlling. *See Ibid.; Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485 (9th Cir.1984).

Anyone who violates any of the five exclusive rights of a copyright owner described in 17 U.S.C. § 106 is an infringer. 17 U.S.C. § 501(a); *Sony Corp. v. Universal City Studios*, — U.S. —, 104 S.Ct. 774, 784, 78 L.Ed.2d 574 (1984). One of those rights is to prepare derivative works based upon the copyrighted work. Another is reproduction of the copyrighted work.

In order to establish infringement by Eisenman, NL must show that it owns the copyright, that Eisenman had access to the copyrighted Baroid Phase II Manual, and that there is substantial similarity of both the general ideas and the expressions of those ideas as between the Eisenman manual and the copyrighted one. *See Landsberg v. Scrabble Crossword Game Players,*

*Inc., supra* at 487–488; *Sid & Marty Krofft Television v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir.1977).

■ NL has provided a certified copy of its certificate of copyright registration for the Baroid Phase II Manual. This is prima facie evidence of the facts stated therein, including ownership and validity. *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 n. 1 (2nd Cir. 1977); 17 U.S.C. § 410(c). It also constitutes prima facie evidence of the originality of the copyrighted work. *Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F.Supp. 125, 139 (D.N.J.1982). Although Eisenman has urged that the Baroid Phase II Manual lacks the requisite originality to be copyrightable, it has not shown that it could produce at trial substantial evidence in support of its position. Originality in reference to a copyright work means only that its creator contributed something of his own creation that was not merely trivial. *Kamar Intern., Inc. v. Russ Berrie and Co.*, 657 F.2d 1059, 1061 (9th Cir.1981); *Roth Greeting Cards v. United Card Company*, 429 F.2d 1106, 1109 (9th Cir. 1970). Changes in the text, format or arrangement will suffice for a newly compiled manual. *See Schroeder v. William Morrow & Co.*, 566 F.2d 3, 6 (7th Cir.1977); *United States v. Hamilton*, 583 F.2d 448, 451 (9th Cir.1978); 17 U.S.C. § 103. NL has satisfied this requirement.

■ Access by the alleged infringer must be shown so as to eliminate coincidence or independent effort as an explanation for the likenesses between the two publications. *Doran v. Sunset House Distributing Corp.*, 197 F.Supp. 940, 948 (S.D. Cal.1961), *aff'd* 304 F.2d 251 (9th Cir.1962). It is uncontroverted that Eisenman had access to the Baroid Phase II Manual before it prepared its own. A company official has acknowledged that it possessed a copy even before it hired the two former NL employees.

---

**1.** C–1, C–A1, C–B1, C–A2, C–C2, E–1, E–2, E–AO, E–AOA, E–A1, E–BO, E–BOA, G–2, G–2A, G–A2, G–A2A, L–O, L–1, L–1C, L–1D, L–1E, L–AO, L– A1B, L–C3, M–O, M–OA, M–1, M–1A, M–2, M–3, M–3A, M–3B, M–4, M–4A, M–A2, M–A4, M–B3, M–B4, M–C3 and M–C4.

Similarity of expression must be established because a copyright protects only the creator's expression of an idea, and not the idea itself. *Landsberg v. Scrabble Crossword Game Players, Inc., supra* at 487–488. The copying need not be of every detail so long as the copy is substantially similar to the copyrighted work. *Doran v. Sunset House Distributing Corp., supra* at 197 F.Supp. 947. More than half of Eisenman's manual was copied verbatim or virtually verbatim from NL's copyrighted Baroid Phase II Manual. The format, the sequence of modules, the charts, tables and graphs, and even the alphanumeric system of designation were copied. Verbatim copying of substantial portions represents unjustifiable appropriation of the expression of an idea; available alternatives exist for expressing ideas. *Sid & Marty Krofft Television v. McDonald's Corp., supra* at n. 17. What has happened here amounts to appropriation by Eisenman of NL's labors. *See Bradbury v. Columbia Broadcasting System, Inc.,* 287 F.2d 478, 485 (9th Cir.1961). Appropriation of another's labor and skill in order to publish a rival work without expenditure of the time and effort required by independent work constitutes copyright infringement. *Schroeder v. William Morrow & Co., supra* at 6. Access plus substantial similarity reflects copying. *Central Tel. Co. of Va. v. Johnson Pub. Co.,* 526 F.Supp. 838, 843 (D.Colo.1981); *Rexnord, Inc. v. Modern Handling Systems, Inc.,* 379 F.Supp. 1190, 1194 (D.Del.1974). The similarities between NL's and Eisenman's manuals are so extensive and striking as, without more, to justify an inference of copying and improper appropriation. *See Knickerbocker Toy Co., Inc. v. Genie Toys Inc.,* 491 F.Supp. 526, 528 (E.D.Mo.1980). Especially probative of the copying is the appearance of NL's typographical errors in Eisenman's manual. *See Rexnord, Inc. v. Modern Handling Systems, Inc., supra* at 1194; *Central Tel. Co. of Va. v. Johnson Pub. Co., supra* at 844.

Expert opinion is not required to establish the substantial similarity of expression—the test is the reaction of the ordinary reasonable person. *Sid & Marty Krofft Television v. McDonald's Corp.,* 562 F.2d 1157, 1164 (9th Cir.1977); *Kamar Intern., Inc. v. Russ Berrie and Co., supra* at 1063. An ordinary observer would recognize that a substantial portion of Eisenman's manual was taken from the Baroid Phase II Manual; this is the test for infringement. *See Bradbury v. Columbia Broadcasting System, Inc., supra* at 485; *Doran v. Sunset House Distributing Corp., supra* at 197 F.Supp. 947.

*Statute of Limitations*

NL's First Counterclaim was filed June 5, 1982. 17 U.S.C. § 507(b) provides that no civil action shall be maintained "unless it is commenced within three years after the claim accrued." Since Eisenman's infringing manual was distributed from January 1979 until June 1980, Eisenman urges that the Counterclaim is barred by the statute of limitations.

The Sixth Circuit agrees in part with Eisenman. In *Hoste v. Radio Corp. of America,* 654 F.2d 11 (6th Cir.1981) it was held that, where the complaint had been filed on March 9, 1978, all claims for damages which had accrued prior to March 9, 1975, were barred. The weight of authority, however, holds that the period of limitation begins to run on the date of the last act of infringement. *See United States v. Shabazz,* 724 F.2d 1536, 1540 (11th Cir.1984). The discussion found in *Taylor v. Meirick,* 712 F.2d 1112, 1118–1119 (7th Cir.1983) is quite persuasive. It observes that copyright infringement is a continuing wrong, and the statute of limitations does not begin to run in such a case until the wrong is over and done with. Were it otherwise, a complainant would have to bring successive suits. Because legal proceedings must be commenced within three years of the last unlawful act, the litigation is not really concerned with claims relating to the distant past. In the instant action, the last act of ingringement occurred in June 1980 and the First Counterclaim was brought less than three years

later. It is not barred by the statute of limitations.

## Laches

Eisenman contends that the doctrine of laches is applicable here. It points out that NL must have been aware that its two employees had been hired away by Eisenman, therefore it should have been particularly observant of Eisenman's drilling mud instructional courses thereafter.

An older Ninth Circuit case has indicated that laches should not bar a suit against a deliberate infringer. *Universal Pictures Co. v. Harold Lloyd Corporation*, 162 F.2d 354, 372 (9th Cir.1947). Since the great bulk of copyright infringement is deliberate, laches would all but be ruled out as an affirmative defense. Other parts of the *Universal Pictures* opinion do indicate that the doctrine of laches is viable, however. On page 372 it finds reasonable the rule that a copyright owner may not deliberately delay his prosecution until the infringer's exploitation has become successful, thereby building up the measure of damages. The rule is recognized in virtually all jurisdictions.

The party raising the defense of laches is required to show that the complaining party did not assert its rights diligently and that the lack of diligence resulted in prejudice to the defending party. *Lottie Joplin Thomas Trust v. Crown Publishers*, 592 F.2d 651, 655 (2nd Cir. 1978); *Hoste v. Radio Corp. of America, supra* at 12.

As to lack of diligence, the *Universal Pictures* opinion, at page 372, suggests that "the delay of action by the copyright owner must be of such a character as to justify a belief on the part of the infringer that there is assurance of an immunity from a claim of liability." There is no indication of such circumstances in the instant action. In fact, Eisenman ceased distribution of its offending manual in June 1980.

The element of prejudice is treated with clarity in *Lemelson v. Carolina En-*

*terprises, Inc.*, 541 F.Supp. 645, 657 (S.D. N.Y.1982). Factors relevant to the issue include the death or unavailability of important witnesses, the dulling of memories through the passage of time, the loss of relevant records, and continuing investments and outlays by the alleged infringer in connection with the operation of its business. None of these considerations demonstrate prejudice to Eisenman in the light of the facts of this case.

## Additional Discovery

Eisenman has requested that this motion for partial summary judgment not be decided against it without first allowing it more time to pursue discovery that might develop facts to support its opposition. It notes that the primary thrust of this lawsuit lies in the field of antitrust. Concentration on discovery as to antitrust issues and time expended on a parallel State court action have limited its pursuit of discovery as to the copyright infringement counterclaim, is the argument.

In response, NL emphasizes that its First Counterclaim was filed and served early in June 1982. Also, Eisenman served NL on October 8, 1982, with thirty-nine interrogatory questions concerning that Counterclaim. NL's response was served on Eisenman November 24, 1982. That response included identification of NL employees and former employees who might possess knowledge of facts pertinent to the copyright infringement claim. Also, on April 14, 1983, NL served interrogatories on Eisenman which included some fifteen questions requesting facts that support Eisenman's affirmative defenses to the First Counterclaim. In other words, Eisenman has long been on notice that the copyright infringement claim was not being left to lie dormant.

Eisenman has not specified any particular facts that further discovery should uncover that would enable it to raise genuine issues of material fact in connection with the instant motion for partial summary judgment. Any such facts have not been shown to have been inacces-

sible to it. The request that Eisenman be allowed further time must be denied. *See Securities & Exchg. Com'n v. Spence & Green,* 612 F.2d 896, 901 (5th Cir.1980); *Schneider v. McKesson & Robbins, Inc.,* 254 F.2d 827, 831 (2nd Cir.1958); *Jason v. Fonda,* 526 F.Supp. 774, 775 (C.D.Cal. 1981), *aff'd* 698 F.2d 966 (9th Cir.1982).

### Summary Judgment

 Summary judgment is appropriate in a copyright infringement case where the two publications are before the court. *Midway Mfg. Co. v. Bandai-America, Inc.,* 546 F.Supp. 125, 141 (D.N.J.1982). Nevertheless, where, as here, the opposing party has denied copying, summary judgment should be granted the claimant only where the similarities between the two works are so striking or so overwhelming and pervasive as to preclude independent creation. *Id.* at n. 11; *Knickerbocker Toy Co., Inc. v. Genie Toys, Inc.,* 491 F.Supp. 526, 529 (E.D.Mo.1980). Put another way, summary judgment is proper if reasonable minds could not differ as to the presence or absence of substantial similarity of expression. *See v. Durang,* 711 F.2d 141, 143 (9th Cir.1983). Then the question may be decided as a matter of law. *Jason v. Fonda, supra* at 526 F.Supp. 777.

NL's showing of Eisenman's access, knowledge, extensive duplication of content and common typographical errors leaves no room for any inference other than that Eisenman copied from the Baroid Phase II Manual. *See Rexnord, Inc. v. Modern Handling Systems, Inc.,* 379 F.Supp. 1190, 1195 (D.Del.1974). There is no genuine issue of material fact as to the liability of Eisenman to NL for the copyright infringement alleged in NL's First Counterclaim.

IT IS, THEREFORE, HEREBY ORDERED that the "Motion by Defendant and Counterclaim Plaintiff NL Industries, Inc. for Summary Judgment as to Liability on NL's First Counterclaim" as against Plaintiff and Counterclaim Defendant Eisenman Chemical Company be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the issue of the amount of damages therefor shall be determined by the trier of fact after trial of that issue.